Security Savings, etc., Assn. *v.* Elbert.

## SECURITY SAVINGS AND LOAN ASSOCIATION *v.* ELBERT ET AL.

[No. 18,562.   Filed October 6, 1899.]

BUILDING AND LOAN ASSOCIATIONS.— *Interest.*— *Usury.*— Contracts between building and loan associations and members for interest on loans in excess of the legal contract rate are not upheld because of any statutory law exempting building and loan associations from the usury law, but on the ground that the contracts are not in their nature usurious, since the member stands in the dual relation of lender and borrower, and the transactions are not mere loans of money as between strangers.  *pp. 200-202.*

SAME.—*Foreign Corporations.—Contracts.*— The State may fix the terms on which foreign corporations may enter to do business, but if a foreign corporation is permitted to enter, the validity of its contracts with citizens of the State must be determined by the rules that apply to similar contracts between citizens and domestic corporations.  *p. 202.*

SAME —*Foreign Corporations.—Contracts.—Failure to Comply with Statutory Regulations.*—A contract entered into by a foreign building and loan association with a citizen of this State is not rendered invalid by reason of the failure of the association to comply with §§3453–3459 Burns 1894, providing that foreign corporations cannot enforce, in any court in this State, any contracts made by their agents until such agents file certificates of their appointment and their principal's consent to be sued in this State by service of process upon the agent, and a compliance with the statute at any time before bringing suit renders such contracts enforceable.  *pp. 202, 203.*

SAME.—*Foreign Corporations.—Contracts.—Failure to Comply with Statutory Regulations.*—The failure of a foreign building and loan association to comply with the act of 1893 (§§4464–4483 Burns 1894), making it unlawful for such association to do business in this State until it has complied with the provisions thereof, does not impair the obligation of existing contracts, nor prevent such association from enforcing contracts entered into prior to the passage of the act.  *pp. 203, 204.*

From the Madison Circuit Court.   *Reversed.*

*A. M. Wagner, J. Bingham, J. Long* and *F. B. Leland,* for appellant.

*J. C. Blacklidge, C. C. Shirley, C. Wolf, B. C. Moon, R. Warner* and *A. W. Brady,* for appellees.

BAKER, J.—Foreclosure of a "building and loan" mortgage. The error assigned is the overruling of appellant's motion for a new trial. The evidence discloses that appellant is a foreign building and loan association, organized under the laws of Minnesota. On November 21, 1891, Elbert took out five shares of $100 each and received a certificate therefor, of which the essential features were Elbert's membership in the appellant association, his agreement to pay monthly dues of sixty cents per share until the shares matured, appellant's agreement to apportion among the shares in good standing all the profits arising from interest, premium and other sources, and appellant's agreement to pay $100 per share "whenever the monthly payments made on any share together with the profits apportioned to such share amount to $100". On the same day, Elbert made written application for a loan of $500 on certain land in Madison county, Indiana, and therein offered a monthly premium of sixty cents per hundred dollars borrowed. On this application appellant awarded Elbert the loan. On January 13, 1892, Elbert executed the bond and mortgage sued on. In the bond Elbert acknowledges the receipt of $500 and promises to pay monthly, $3 dues on his stock, $3 premium, and $2.50 interest, "until the value of his stock shall equal the amount loaned". The mortgage secures the performance of the covenants in the bond. The business of selling the stock and making the loan was done in Madison county through appellant's agent, Herman F. Wilkie, a resident of that county. At that time, appellant had not complied with the foreign corporations act of 1852, §§3022-3028 R. S. 1881 and Horner 1897, §§3453-3459 Burns 1894. At no time did appellant comply with the foreign building and loan associations act of 1893, §§4464-4483 Burns 1894, §§3420v-3420oo Horner 1897. After the passage of the act of 1893, and before bringing this suit, appellant and its agent Wilkie did the things required by the act of 1852. Appellee Mary Peele is the

divorced wife of Elbert.    Appellee Edward Peele is the husband of Mary.    Elbert kept up the payments under his bond till January, 1896.    This suit was begun in November 1896.    At that time Mary Peele had become the owner of the mortgaged land.    Elbert defaulted.    As against Peele and Peele, the court rendered judgment, *in rem* only, for the amount of the loan with six per cent. interest, less all stock, interest and premium payments under the bond, reckoned according to the rule for partial payments.    The motion for a new trial states as grounds that the decision is contrary to law and not sustained by sufficient evidence, and that the assessment of the amount of recovery is too small.

The Constitution of this State, in force since November 1, 1851, provides:    Article 1, §23, "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens"; Article 4, §22, "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * (15) In relation to interest on money".    On May 27, 1852, the legislature passed a general usury law, applicable to all cases of "interest upon the loan or forbearance of money". 1 G. & H. p. 406.    From that day to this, there has been upon the statute books a general usury law, essentially the same as the first.    §§7043-7050 Burns 1894.

The method of business known as "building and loan", and which, as Endlich says, "in its essential plan and nature is the same all over the world", developed in England at least as early as 1815.    The first act of parliament for the incorporation of building and loan societies was passed in 1836.    Wurtzburg's Bldg. So. 12.    Prior to that time, the business had been done through unincorporated associations, that is, partnerships.    The business was introduced into the United States as early as 1831.    As there were no "building and loan statutes", the business was necessarily done through unincorporated associations.    It was not until

in the period of 1850 to 1860 that the states generally undertook statutory regulation of the business. In this State the first building and loan statute was enacted March 5, 1857. 1 G. & H. p. 273. From the title, "an act for the incorporation and continuance of building, etc., associations", and from section 10, "any building, etc., association, organized, shall have the benefit of this law", it is evident that building and loan business was done in this State, prior to 1857, by partnerships. In *Stein* v. *Indianapolis, etc., Assn.*, 18 Ind. 237, 81 Am. Dec. 353, decided in 1862, the building and loan bond sued upon was given March 31, 1856. The question whether or not the building and loan bond (under which the member stands in the dual relation of lender and borrower) contravenes the general usury law and the constitutional provision relating to interest, was decided in the negative in *McLaughlin* v. *Citizens, etc., Assn.*, 62 Ind. 264. This case was decided in 1878. The association was organized under the law of 1857 and the bond sued on was executed in 1873. The act of 1857 was replaced by the act of 1875. §3407 *et seq.*, R. S. 1881. In the act of 1857 it was provided that when loanable funds were on hand a loan be made to that "member who shall take the same upon the terms most favorable to the company". There was no legislative attempt to grant to building and loan associations, as a special privilege, exemption from the usury law. In section four of the act of 1875 it was expressly provided that premiums, fines, and interest on premiums should not be deemed usurious. Of this, the court said in the McLaughlin case: "We think that the provisions of this section did not change the law as it had previously existed, but merely declared in plain language what the law was on the subject of the section." That is to say, if the nature of the transaction is in fact usurious, the legislative declaration can not make it innocent; if building and loan associations can stand only upon a special grant, the constitutional prohibitions directed against granting special

privileges and making special laws in relation to interest would drive all of them, domestic and foreign, out of the State. This court, since the McLaughlin case, has continued to recognize that the transaction between a borrowing member and his society is not a mere loan of money as between strangers. *Shaffrey* v. *Workingmen's, etc., Assn.*, 64 Ind. 600; *Knowlton* v. *Citizens, etc., Assn.*, 66 Ind. 602; *Wohlford* v. *Citizens, etc., Assn.*, 140 Ind. 662, 29 L. R. A. 177; *Marion Trust Co.* v. *Trustees of Edwards Lodge, ante*, 96. That the transaction is not in its nature usurious seems to be supported by the great weight of authorities. Freeman's note in *Bank* v. *Cook*, 46 Am. St. 200; 4 Am. & Eng. Ency. Law 1054-1056 (2nd ed.).

The State may fix the terms on which foreign corporations may enter to do business. But if a foreign corporation is permitted to enter, the validity of its contracts with citizens of this State must be determined by the rules that apply to the same contracts between citizens and domestic corporations. It will hardly do to say that a building and loan mortgage on lands in Madison county is in its nature non-usurious because given to an Indiana association of which the mortgagor is a member, and that the same mortgage is in its nature usurious because the association is a foreign one. When appellant transacted the business of selling the stock and making the loan to Elbert, there was no statute prescribing the terms on which foreign building and loan associations might do business in this State. The act of 1852 was in force, which required agents of all foreign corporations, before entering upon the duties of their agency in this State, to file in the office of the clerk of the circuit court of the counties in which they intended to do business certificates of their appointment and their principal's consent to be sued, by service of process on the agents, in the courts of this State by citizens having claims arising out of transactions with such agents. Failure of an agent to file these papers made him liable to a fine. Section four provided that the foreign

corporations could not enforce, in any court of this State, any contracts made by their agents, before a compliance by such agents with the provisions of the act. This section does not render any contract void. But, in order to compel foreign corporations to submit to the jurisdiction of our courts in suits against them, our courts will not entertain suits by them until they agree that suits against them may also be tried here. *Wood, etc., Co.* v. *Caldwell,* 54 Ind. 270, 23 Am. Rep. 641; *Domestic, etc., Co.* v. *Hatfield,* 58 Ind. 187; *Daly* v. *National Ins. Co.,* 64 Ind. 1; *Singer Mfg. Co.* v. *Brown,* 64 Ind. 548; *American Ins. Co.* v. *Wellman,* 69 Ind. 413; *Elston* v. *Piggott,* 94 Ind. 14; *Phenix Ins. Co.* v. *Pennsylvania R. Co.,* 134 Ind. 215.

Prior to the act of 1852, the common law of comity was in full force. Appellant would have been entitled to transact in this State any business that did not contravene our public policy. 2 Morawetz Corp. §§958, 960-966; Murfree For. Corp. §§1-5, 208; Story Confl. Laws 36-38; Rorer Interstate Law (2nd ed.) §§6, 80, 382, 383; *Bank of Augusta* v. *Earle,* 13 Pet. 517, 562, 590; *Freie* v. *Fidelity, etc., Assn.,* 166 Ill. 128, 46 N. E. 784; *Maine Guarantee Co.* v. *Cox,* 146 Ind. 107, on petition for rehearing. Under the act of 1852, appellant had the same rights in respect to the validity of its contracts. As has been seen from an examination of our Constitution, statutes and decisions, what is known as the building and loan business is not in contravention of our public policy. It results that the contract in this case was, so far as the issues and the evidence disclose, validly entered into.

The act of 1893, declaring that it shall be unlawful for a foreign corporation to do a building and loan business in this State, until it shall have deposited bonds, etc., must be read prospectively, if possible; must be read as not impairing the obligation of existing contracts, to be constitutional. To meet these requirements the act must be construed to mean that the business which may not lawfully be done, until the

terms imposed are complied with, is the making of new contracts, the issuance of new shares, the execution of new loans. If a contract is valid when executed, which contemplates the lapse of several years before all of its terms are carried out, it must be held to remain valid and enforceable to the end, under the laws in force at the time of its execution, no matter what changes the law has undergone in the lifetime of the contract. *State, ex rel.,* v. *Helms,* 136 Ind. 122, 133.

As the contract was valid when executed, and as no ground for abatement of the action existed, the finding is contrary to law.

Judgment reversed, with directions to sustain the motion for a new trial.