MACMURRAY, RECEIVER, ET AL. *v.* SIDWELL.

[No. 19,437.    Filed November 27, 1900.]

BUILDING AND LOAN ASSOCIATIONS.—*Insolvency.—Foreign Associations.—Preference of Stockholders.*—A foreign building and loan association entered the State of Indiana in 1890, complied with the laws in force relative to foreign corporations, issued stock and made loans from a common fund collected from the various states in which it did business until the passage of the act of 1893 requiring such associations to make a deposit, when the association ceased doing any new business. Thereafter the association became insolvent, a receiver of its assets in Indiana was appointed, and a general receiver for all of its assets save those of Indiana, and, it appearing that the assets in Indiana exceeded the claims, appellee on behalf of the Indiana stockholders, sought to have the Indiana stockholders paid in full from the assets in the State. *Held*, that the Indiana stockholders have no preferential claim upon the Indiana assets.

From the Delaware Circuit Court.    *Reversed.*

*James Bingham* and *Jesse Long,* for appellants.

*G. H. Koons, H. F. Wilkie* and *Henrietta Wilkie,* for appellee.

BAKER, J.—On May 14, 1898, in a suit begun in the Delaware Circuit Court by Charles and Eudora Ticknor against the National Home, Building and Loan Association, organized and existing under the laws of Illinois and having its home office at Bloomington, Illinois, the association was found to be insolvent and appellant Francis James was appointed receiver of its assets in Indiana. On May 19, 1898, in a suit pending in the Circuit Court of the United States for the southern district of Illinois, the association was found to be insolvent and appellant James E. MacMurray was appointed receiver of all its assets save those in Indiana. Thereafter and during May, 1898, Mr. MacMurray was appointed ancillary receiver by the Circuit Courts of the United States for the various districts in which the association had done business. On October 16,

1899, appellee, Andes M. Sidwell, a stockholder of the association who resides in this State, on behalf of himself and all other Indiana stockholders, filed a petition in the receivership case pending in the Delaware Circuit Court, asking the court to order Mr. James to pay the Indiana stockholders in full from the Indiana assets and pay the balance only to Mr. MacMurray.    Thereupon Mr. MacMurray obtained an order from the Circuit Court of the United States for the southern district of Illinois, directing him to intervene in the cause in the Delaware Circuit Court.    By leave of the Delaware Circuit Court Mr. MacMurray and Mr. James, as receivers, filed an intervening petition, asking among other things that the Indiana assets be added to the other assets and that the whole be distributed equally among all the stockholders in proportion to their payments on stock. Mr. Sidwell, on behalf of himself and all other Indiana stockholders, was permitted to file a demurrer to the receivers' petition for want of facts.    The court sustained the demurrer, and, on the receivers' refusal to plead further, entered judgment that they take nothing by their petition. The court granted the receivers' prayer for an appeal to this court.

The material facts in the petition are these:   The association was organized in February, 1890, under the statutes of Illinois.   The statutes, the association's charter and its by-laws are set forth.   The charter and by-laws are similar in scope to those of associations organized in this State. The statutes, in spirit, are the same as Indiana's. The association was formed to do a "building and loan" business, which, as Endlich says, "in its essential plan and nature is the same all over the world".   It transacted business in various states until the appointment of the receivers. There are no general creditors.   The claimants in all the states are stockholders.   At the time of the appointment of the receivers the total claims amounted to $579,388

and the appraised value of all the assets to $376,640. In some of the states the assets exceeded the claims. In the greater number of them the claims exceeded the assets. In Indiana the assets were $79,625 and the claims $54,329. The assets consisted of evidences of loans and of real estate obtained in collecting loans. The loans were all made at the home office in Bloomington, Illinois. The Indiana assets originated from loans from a common fund created by proportionate contributions of all stockholders regardless of state lines. On entering Indiana in 1890 the association complied with the foreign corporations act of 1852 by filing in each county the required certificates of agents' authority and of the association's consent to be sued by process served on Indiana agents. The association did not make the deposit required by the foreign building and loan associations act of 1893, which came into force on May 18, 1893. After April 1, 1893, the association made no new contracts, issued no new shares, executed no new loans, in Indiana; and did no business in the State other than to collect dues on stock, and interest and premium on loans, already in existence. Mr. James has over $20,000 on hand in cash. Mr. MacMurray has in his hands all of the assets of the association except those in Indiana, and all the claims of stockholders except of Indiana stockholders. In directing Mr. MacMurray to intervene in the Delaware Circuit Court, the Circuit Court of the United States for the southern district of Illinois entered an order indicating the plan of distribution that would be carried out if possible, namely, that the two courts should coöperate to the end that there be one and a harmonious administration of the estate by distributing all the assets wherever collected among all the stockholders wherever resident, and that if Mr. James be ordered from time to time to turn over to Mr. MacMurray the net proceeds of Indiana assets Mr. MacMurray shall treat the claims of Indiana stockholders approved by the Delaware Circuit

Court as adjudicated claims, and that Indiana stockholders shall receive the same distributions, according to the respective amounts paid in by them on stock, as are received by the stockholders of any other state.

This association was a coöperative enterprise. It dealt only with its own members. It was a corporate copartnership, so to say. Mutuality and equality were its essential working principles. Every stockholder, whether in Indiana or another state, contributed to a fund in which all had interests in common. If the enterprise had been successful, all would have received dividends proportionate to their investments as stockholders. On insolvency, the assets should be distributed according to the nature and source of the fund and of the claims upon it. The fund is the common property of all the stockholders and the claims upon it are the demands of all the stockholders for a distribution. The loss should be borne by those who would have shared the profits, and in the same proportions. *Marion Trust Co. v. Trustees Edwards Lodge,* 153 Ind. 96; *Huter* v. *Union Trust Co.,* 153 Ind. 204; *James* v. *Sidwell,* 153 Ind. 697.

The doing of a building and loan business in Indiana, whether by a domestic or a foreign association, contravenes neither the statutes nor the public policy of this State. *Security Savings Assn.* v. *Elbert,* 153 Ind. 198; *International Bldg. Assn.* v. *Wall,* 153 Ind. 554; *Equitable Loan Assn.* v. *Peed,* 153 Ind. 697; *National Loan Assn.* v. *Black,* 153 Ind. 701; *United States Loan Co.* v. *First Methodist Church,* 153 Ind. 702. This association, in entering the State in 1890 and in continuing to do business until April 1, 1893, complied with the statutes then in force. There is no merit in appellee's suggestion that it was against public policy to admit this association because the Illinois statutes authorized a larger capitalization than did the Indiana statutes. It is the nature and not the size of a business that determines its legality. The association did not make the deposit required by the act of 1893. Acts 1893, p. 274,

§§4464-4483 Burns 1894, §§3420v-3420oo Horner 1897. Regarding this act it was said in *Security Savings Assn.* v. *Elbert, supra:* "The act of 1893, declaring that it shall be unlawful for a foreign corporation to do a building and loan business in this State, until it shall have deposited bonds, etc., must be read prospectively, if possible; must be read as not impairing the obligation of existing contracts, to be constitutional. To meet these requirements the act must be construed to mean that the business which may not lawfully be done, until the terms imposed are complied with, is the making of new contracts, the issuance of new shares, the execution of new loans. If a contract is valid when executed, which contemplates the lapse of several years before all of its terms are carried out, it must be held to remain valid and enforceable to the end, under the law in force at the time of its execution, no matter what changes the law has undergone in the lifetime of the contract." The petition shows that the association, under the foregoing interpretation of the act of 1893, did no business in Indiana after the act went into effect. On the taking effect of the act, the association was under no legal nor moral obligation either to the State or to its stockholders in Indiana to make the deposit. The association had the option either to quit business in the State or to make the deposit and continue. To hold that the association, by deciding to quit, forfeited its right to collect what was coming to it on business already done, would work or at least tend to work a confiscation of its property. The case of *Lewis* v. *American Savings Assn.,* 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559, wherein it was held that Wisconsin stockholders had a preferential claim upon the deposit made by a foreign building and loan association, is not in point, because here the association elected to quit and not to make the deposit. Neither is the question involved as to what would be the rights of Indiana stockholders (or those who might have become stockholders after the taking effect of the act) to a

preferential claim upon the assets sequestered in this State, if the association, in defiance of the act, had continued to do business in this State after May 18, 1893.   On the facts stated in the petition, the Indiana stockholders have no preferential claim upon the Indiana assets.

This court can not formulate the orders that the Delaware Circuit Court should make from time to time, and can only indicate the general lines upon which that court should proceed.   Mr. James should continue to convert the Indiana assets into money.   He should report his collections and disbursements and all his doings to the Delaware Circuit Court for approval.   All expenses of the Indiana receivership, including the costs of this appeal, should be paid from the Indiana assets under the court's orders.   Indiana stockholders should not be put to the trouble and expense of proving their claims in Illinois.   The Delaware Circuit Court should see to it that the Indiana stockholders receive the same returns from the total assets that are received by stockholders of other states, and no more.   To this end the Delaware Circuit Court should coöperate with the Circuit Court of the United States for the southern district of Illinois. The Indiana receivership is the elder.   But Mr. MacMurray is receiver at the insolvent's domicil.   As Mr. MacMurray has all the assets and claims except those in Indiana, it is suitable that distribution of the total assets to all stockholders should be made through him under orders of the court of his appointment.   Mr. James should be ordered from time to turn over to Mr. MacMurray the net proceeds of the Indiana assets in order to enable Mr. MacMurray to make general distributions to all stockholders.   The Delaware Circuit Court should exercise its discretion as to the times when and the conditions on which these orders shall be made, so that Indiana stockholders will be fully protected in their rights as herein declared.   In brief, it is only by distributing all the assets among all the stockholders that equity can be done, and this is the guiding principle.   In a

566    SUPREME COURT OF INDIANA,

Manufacturers Gas, etc., Co. *v.* Indiana Nat. Gas, etc., Co.

situation like the present one, comity requires that the court of the insolvent's domicil have the lead. *Cowen* v. *Failey,* 149 Ind. 382; *Durward* v. *Jewett,* 46 La. Ann. 559, 15 South. 386; *Ware* v. *Supreme Silting of Iron Hall* (N. J. Eq.), 28 Atl. 1041; *Buswell* v. *Supreme Sitting of Iron Hall,* 161 Mass. 224, 36 N. E. 1065, 23 L. R. A. 846; *Baldwin* v. *Hosmer,* 101 Mich. 119, 59 N. W. 432, 25 L. R. A. 739; *Relfe* v. *Rundle,* 103 U. S. 222, 26 L. ed. 337; *Blake* v. *McClung,* 172 U. S. 239, 19 Sup. Ct. 165, 43 L. ed. 432; *Blake* v. *McClung,* 176 U. S. 59, 20 Sup. Ct. 307, 44 L. ed. 371; *Sully* v. *American Nat. Bank,* 178 U. S. 289, 20 Sup. Ct. 935, 44 L. ed. 1072; *Taylor* v. *Life Assn. of America,* 13 Fed. 493; *Parsons* v. *Charter Oak Life Ins. Co.,* 31 Fed. 305; *Failey* v. *Talbee,* 55 Fed. 892; *Maynard* v. *Granite State Provident Assn.,* 92 Fed. 435, 34 C. C. A. 438.

Judgment reversed, with instructions to overrule the demurrer to the petition and to proceed not inconsistently with this opinion.