## CLARKE, RECEIVER, v. DARR ET AL.

[No. 20,619.　Filed February 6, 1907.]

1. APPEAL. — *Reply.* — *Sustaining Demurrer.* — *Facts Provable under another Paragraph.*—It is not reversible error to sustain a demurrer to paragraphs of a reply whose facts are provable under another paragraph already pleaded.　p. 116.

2. CORPORATIONS. — *Foreign Business.* — *Deposits with State Treasurer.*—*Trusts.*—Securities deposited with a foreign state treasurer as a condition precedent to a corporation's doing business within such state, constitute a trust fund for the protection of such corporation's creditors within such state.　p. 117.

3. BUILDING AND LOAN ASSOCIATIONS.—*Nature of.*—The primary purpose of a building and loan association is to assist its members in saving and investing money and in procuring money on small stated payments, on the mutual building society plan. p. 118.

4. SAME.—*Mutuality.*—*Profits.*—*Losses.*—The stockholders in a building and loan association contribute to a common fund, and share equally and proportionately in the profits and losses. p. 119.

5. SAME.—*Deposit of Securities.*—*Effect.*—The deposit of its securities with a foreign state treasurer for the protection of the stockholders in such state, by a building and loan association, necessarily results in a destruction of the principle of the equality of the members thereof; and such association is presumed to intend the natural consequences of its acts.　p. 119.

6. SAME. — *Deposit of Securities.*—*Statutes.*—*Permissive.*—The statute of Minnesota (§2860 General Statutes 1894), providing that building and loan associations may deposit securities with other states when required to do so by their laws, is permissive only, and was not intended to authorize a preference of one set of stockholders over another in case of insolvency.　p. 120.

7. SAME. — *Insolvency.* — *Administration of Assets.* — *Trusts.*— *Contracts.*—Upon the insolvency of a building and loan association its contracts with its members are abrogated and its assets become trust property to be administered by a court of equity.　p. 121.

8. SAME. — *Insolvency.*—*Contracts.*—*Preferences.*—The contract of a borrowing member of a foreign building and loan association is void *ab initio* as to its enforcement by the receiver thereof appointed in another state, who must apply the amount due

thereon to the payment of the stockholders of his state to the exclusion of those of other states. *Wohlford* v. *Citizens, etc., Sav. Assn.,* 140 Ind. 662, and *Marion Trust Co.* v. *Trustees, etc.,* 153 Ind. 96, distinguished.  p. 122.

9.  BUILDING AND LOAN ASSOCIATIONS. — *Insolvency.—Stock Payments.—Preferences.—*An Indiana borrowing stockholder in a Minnesota building and loan association is entitled to have his payments, of whatsoever nature, together with six per cent interest, credited on his actual loan calculated at six per cent interest, where such association becomes insolvent and its Wisconsin receiver brought suit against such borrower with a view of applying the amount collected solely for the benefit of the Wisconsin creditors and stockholders, such borrower having no knowledge that his mortgage was deposited with the Wisconsin state treasurer for the benefit of such persons.  p. 122.

From Elkhart Circuit Court; *J. D. Ferrall,* Judge.

Suit by Melville C. Clarke, as receiver of the American Savings & Loan Association, against Charles L. Darr and others.  From a decree for plaintiff for less than the prayer of his complaint, he appeals.  Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.  *Affirmed.*

*Miller, Drake & Hubbell,* for appellant.

*L. W. Vail* and *C. A. Wehmeyer,* for appellees.

JORDAN, J.—Appellant, as receiver of the American Savings & Loan Association, an insolvent building and loan corporation, commenced this suit to foreclose a mortgage on certain real estate situated in Elkhart county, Indiana.  A demurrer to the complaint was overruled and thereupon defendant Darr filed an answer in four paragraphs, the first of which was the general denial.  Appellant demurred to the second, third and fourth paragraphs of this answer, and the demurrer was sustained to the third, but overruled as to the second and fourth.  Reply in three paragraphs, the first of which is the general denial.  A demurrer was sustained to the third paragraph and overruled as to the second.  The issues joined under the plead-

ings were tried by the court, and a judgment, over appellant's motion for a new trial, was rendered in his favor for $100, and a foreclosure of the mortgage in suit was decreed.

The errors assigned in this appeal are based upon the overruling of demurrers to the answer and reply and denying the motion for a new trial.

The complaint is in one paragraph, and the following appears to be a correct summary thereof: The American Building & Loan Association was organized under the laws of the state of Minnesota in April, 1887. Subsequently, in July, 1892, its name was changed to the American Savings & Loan Association. The general nature and character of its business, as stated, was "to assist its members in saving and investing money, in buying and improving real estate, and in procuring money for other purposes by loaning or advancing, under the mutual building society plan, to such of them as may desire to anticipate the ultimate value of their shares, funds accumulated from monthly contributions of the stockholders, and also other funds as may from time to time come into its hands." The facts showing that appellee became a borrowing member of said association on August 1, 1890, and the execution of the mortgage and bond in suit, etc., are all alleged and disclosed by the complaint. The by-laws of said association, in force at the time appellee became a member, provided that the directors of the association should have the power to enter into such contracts and agreements, and appoint such agent for its business as they might deem proper for the best interests of the affairs of the corporation. It did a general building and loan business throughout the United States and carried on a general business of a mutual building and loan association from the time of its incorporation until January 14, 1896, at which time it became insolvent. In the year 1889 the legislature of the state of Wisconsin

enacted a law requiring foreign building and loan associa-
tions which desired to do business in that state to deposit
with the state treasurer cash or approved securities of the
value of $100,000, in trust for the benefit of the share-
holders and creditors of the association residing in that
state.   This law provided that, among other securities,
mortgages taken by an association from its members might
be so deposited, and that the interest and dues thereon were
to be paid at the home office of the association at Minne-
apolis, Minnesota.   As these securities were paid they
might be withdrawn and others deposited in their place.
In said year 1889, after the passage of said act by the leg-
islature of Wisconsin, and in compliance therewith, this
association deposited with the state treasurer of Wisconsin,
mortgages and bonds of its members of the face value of
$100,000.   On or about October, 1890, the mortgage in
suit was deposited with said treasurer in lieu of certain
other securities withdrawn.   Appellee Darr paid as dues
upon his said shares of stock the sum of $571.20, being dues
from June, 1890, to January, 1896, inclusive.   Upon the
association's becoming insolvent William D. Hale was ap-
pointed, on January 18, 1896, general receiver thereof by
a court of competent jurisdiction in Minnesota, and on
February 6 of said year appellant was appointed a receiver
for said association, by a competent court in the state of
Wisconsin, to collect and distribute the securities of said
association which were on deposit with the treasurer of that
state.

It is alleged that appellee Darr paid as interest on his
said loan the sum of $227.62, and that he agreed under the
stipulations of the mortgage and bond in suit to pay six
per cent on the $700 borrowed by him, which interest was
payable monthly, and he was to pay sixty cents per share
of stock dues until said stock should be matured, and be
of the value of $100.   These payments aggregated $11.90
per month.   It is averred that upon the insolvency of said

Clarke *v.* Darr—168 Ind. 101.

association the contract which the latter had with said appellee became abrogated and rescinded, and that the actual amount—$700—loaned him became due and payable, with interest thereon at the rate of seven per cent, that being the legal rate of interest under the laws of Minnesota, less all interest payments, with seven per cent interest from the several dates thereof; or, in other words, that there is due appellant the sum of $700, with interest at the rate of seven per cent per annum from the date of said mortgage, less $227.62 paid as interest, with interest from the several dates of payment thereof at a like rate. A copy of the laws of the state of Wisconsin, providing the conditions upon which foreign building and loan associations may do business in that state, and a copy of the bond .executed by said appellee, in the sum of $1,400, to secure the payment of his loan, together with dues upon fourteen shares of stock issued to him, are all made exhibits and filed with the complaint. The mortgage in suit, together with its assignment, and the assignment of the bond to appellant by Hale, the general receiver, are filed with the complaint and made exhibits thereof, as are also the by-laws of the association which were in force when said appellee became a member of the association. Other exhibits are also filed with the complaint.

The second paragraph of appellee Darr's answer, which is addressed as a partial answer to the complaint, discloses that the bond and mortgage in suit were executed under the following circumstances: In the summer of 1890 the firm of Vesey, Miller & Company, partners engaged in the practice of law at the city of Goshen, Indiana, advertised themselves as loan agents, and said appellee applied to them for a loan of $700, and offered as security therefor the property described in the mortgage, being certain real estate situated in the city of Goshen, Elkhart county, Indiana. It is alleged that these loan agents informed him that they were agents of the American Building & Loan

Association, and that he, by subscribing for fourteen shares of stock in said association, could procure from the association the loan which he desired; that thereupon he did subscribe for said shares of stock and made application for a loan of $700; that later on he was informed by said agents that his application for a loan had been approved, and thereupon he executed the bond and mortgage in suit and received from said Vesey, Miller & Company, who were at the time the agents of said loan association, the sum of $630, and no more; that at the time of making said subscription said agents explained to him that he was becoming a member of a building and loan association, and that he was required to pay a commission of $70; that he understood the transaction as thus explained, but was ignorant of the laws of Minnesota and Wisconsin relative to building and loan associations, and at that time he did not know that said association, from which he borrowed the money and of which he became a member, was doing business in Wisconsin, and that said agents were not then informed or aware of said fact; that these agents represented to him that he was becoming a member of a mutual company, in which all members would share equally and would have equal rights, and this he believed when he secured said loan; that at the time he obtained said loan said association, by virtue of the laws of Minnesota and Wisconsin, was engaged in taking its bonds, notes and mortgages, in which defendant Darr was entitled to an equal share in proportion to the stock held by him, and was depositing them with the treasurer of Wisconsin, for the benefit and protection of the members of said association residing in said state and as security for such members against loss, of all of which said defendant was at the time ignorant, and all of which was a fraud upon his rights; that on August 14, 1890, he received the sum of $630; that the subscription for stock, the application for the loan, the execution of the mortgage and bond in suit,

the assignment of the stock to said association, and the payment to him of $630 were all one and the same transaction, and all for the sole purpose of procuring said loan; that on October 3, 1890, without any notice from said defendant, and without his knowledge and consent, the bond and mortgage which he executed as aforesaid, were deposited with the treasurer of Wisconsin, under the arrangement as aforesaid, and in fraud of defendant's rights therein, for the purpose of securing against loss the members of said association who resided in Wisconsin; that the association maintained an agency at the city of Goshen, Indiana, and said defendant was directed to make his monthly payments, as provided in said bond and mortgage, to these agents; that he paid monthly the sum of $11.97, until he had paid on said bond and mortgage the sum of $810.60; that an itemized statement of these payments is filed and made an exhibit, and they are $3 in excess of the sum of $630 advanced to him as aforesaid, with six per cent interest computed and added monthly during the entire period in which he made the payments; that when he was making these payments he was ignorant of the fact that his bond and mortgage were deposited with the treasurer of Wisconsin, for the purpose hereinbefore stated, and was ignorant of the fact that any of the association's property, notes, or bonds were so deposited or held for the benefit or protection of the company's members in said state of Wisconsin; that after he had made all the payments aforesaid, without his knowledge or consent, the bond and mortgage which he had executed were assigned to the plaintiff, the receiver herein, for the purpose and with the intent of carrying out the fraud against defendant and depriving him of his interest in said bond and mortgage, destroying the mutuality of such building and loan association, benefiting one set of members as against the interests of another set; that $99,-000 of other bonds and mortgages executed by other mem-

bers of said association, not residents of Wisconsin at the time of making said loan, had been transferred and assigned for the purpose aforesaid and in fraud of his rights as a member of said mutual association; that the actual amount which he borrowed, and for which the bond and mortgage in suit were executed, was $630, and no more; that the rate of interest fixed in the bond and mortgage was six per cent per annum, but the amount of interest as fixed by said bond and mortgage is $3.50, payable each and every month from the date thereof until paid, which sum was thirty-five cents in excess of the six per cent provided in the bond on the amount actually loaned for the first month and on every increasing amount in excess of said rate provided for each successive month until it reached a rate of 600 per cent per annum upon the last payment. An itemized statement of such excesses of interest charged is set out and filed as an exhibit with the answer.

By the laws of Minnesota in force at the time appellee Darr entered into the contract in suit any rate of interest charged in excess of the rate of ten per cent was deemed usurious. A copy of this law is attached to the exhibit. It is alleged that the bond set up in plaintiff's complaint is usurious, and that it charges an average rate of interest far in excess of the ten per cent. Appellee Darr demands that his membership and stock in said association be declared fraudulent from the beginning; that the pretended advancement of money upon his stock be declared and adjudged to be an ordinary loan of money, drawing only the legal rate of interest upon all unpaid balances, and that all payments made by him, as aforesaid, as dues upon said pretended stock shall be declared as payments upon such loan, and that each monthly payment made by him as herein set out, namely, $8.40 as dues, and $3.50 as interest, shall be construed in one lump payment of said debt, and judgment be rendered accordingly.

The fourth paragraph of the answer alleges facts similar to those averred in the second paragraph. Therefore it is not essential to set forth a summary thereof.

The third paragraph of appellant's reply, to which a demurrer was sustained, after alleging facts similar to those alleged in the complaint relative to the organization of the association, avers that the government thereof was vested in a board of seven directors, elected by the stockholders; that membership in the company was acquired by a person taking stock therein and paying the prescribed admission fee; that the directors were authorized, under the by-laws of said company, to enter into such contracts and appoint such agents for its business management as they might deem for the best interest of its affairs. The paragraph then proceeds to show, under the statute of Wisconsin enacted in 1889, that the association deposited with the treasurer of said state, bonds, mortgages and securities to the amount of $100,000; that this deposit was required by the laws of Wisconsin as a condition precedent before the association could enter and do business in said state; that such deposit was made by authority of the directors, was within the scope of their authority, and in pursuance of a resolution duly passed by them; that said association was licensed to do business in Wisconsin from year to year for a period of more than five years, during which period it did a large business in said state, and increased the number of its members therein from 162 to 246, which was the number of resident members in said state at the time the association became insolvent and went into the hands of a receiver; that great benefits resulted to the association and its members, including defendant Darr, in the business so done, and during the time said securities were deposited with the treasurer of Wisconsin the association received and collected all dues on stock held as collateral for advancement to its members, and received and collected all interest due on said securities to the same

extent as if the mortgages and securities had been deposited in Minnesota. It is alleged that the bond and mortgage in suit were, on January 17, 1896, assigned to the plaintiff, as such receiver, by William D. Hale, domiciliary receiver for said association; that said assignment was made to carry out the purpose of the trust created by the deposit aforesaid, after the insolvency of the association was confirmed by the district court of Henepin county, Minnesota.

It is alleged that the association was declared insolvent by the courts of Minnesota on January 14, 1896; that said Hale was appointed general receiver to collect and distribute its assets and wind up its affairs; that plaintiff was appointed receiver of said association by the courts of Wisconsin, in and for that state, on February 6, 1896; that said Hale, as such receiver, unsuccessfully sought by a suit in a court of Wisconsin to obtain the possession of the securities of said association then in the hands of the treasurer of said state, in order that he might himself distribute the entire assets of the company; that the supreme court of Wisconsin, on appeal, held that said Hale, the general receiver, had no right to said securities, and adjudged and decreed that plaintiff should proceed to collect and distribute the assets of such company in Wisconsin; that in compliance therewith, and for no other reason, said Hale, on January 17, 1896, duly assigned said securities, including defendant's mortgage, to plaintiff. It is further shown that claims had been filed and allowed against plaintiff, as such receiver, in the sum of $64,000, and that the actual value of the securities in his hands is less than $100,000; that Hale, the general receiver, has administered his said trust, made his final report, and has been discharged; that the amount due and unpaid on defendant Darr's mortgage is approximately $900; that the total stock payments made by him amount to $571.20, and that he has failed and omitted to file any claim against Receiver Hale for his distributive share of the assets of said association, and that

he has thereby waived his right to share in same; that plaintiff's maximum loss, by reason of the deposit of said securities in Wisconsin, is four per cent of the $571.20, or $22.85, and that the plaintiff is ready and willing for the court to set off said sum of $22.85, or such amount as will equal plaintiff's loss, if any, by reason of said deposit against said sum of $900, and to render judgment against plaintiff for the remainder, and the plaintiff says that, except as hereinbefore admitted, he denies each material allegation in defendant's second and fourth paragraphs of answer.    Wherefore he prays judgment for $1,000, and all other proper relief.

The evidence in the record shows the organization of the American Building & Loan Association on April 13, 1887, under and by virtue of the statutes of Minnesota, as a mutual building and loan association.    It had its principal office and place of business at Minneapolis, in said state, and it continued to transact business until 1893, when its name was changed to the American Savings & Loan Association.    Its government was vested in a board of seven directors, elected by the stockholders, and membership was acquired by taking stock in the company and paying the prescribed admission fee.    On June 30, 1890, appellee applied to said association for membership therein.    On the same day he applied for a loan, or advancement, from the association of $700.    On July 1, 1890, he executed and delivered the following bid for a loan:

"Goshen, Indiana, July 1, 1890.    Amount of money desired is $700.    I hereby offer a premium of $50 per share.    My certificate is number ————.
                                        Charles L. Darr."

On August 4, 1890, appellee Darr executed the bond and mortgage in suit.    He is shown to have paid, as monthly dues on the shares of stock owned by him, $576.60, and paid as interest on said loan the sum of $231, making a total of $807.60.    An act of the legislature of Wisconsin

providing for the deposit of securities by foreign building
and loan associations, before they would be permitted to do
business in that state, appears in evidence, as does also a
resolution of the board of directors of said association,
adopted on May 1, 1889, authorizing a deposit of the com-
pany's securities to the amount of $100,000, to be made
with the treasurer of Wisconsin, as alleged and shown in
the pleadings. In compliance with said resolution, be-
tween April 19 and July 10, 1889, the officers of the as-
sociation deposited, of the bonds and mortgages held by it
against its borrowing members, an amount of the value of
$100,000, with the treasurer of Wisconsin. On October
3, 1890, the association also deposited the bond and mort-
gage in suit with said treasurer in place of other securities
withdrawn. It is further shown that the association col-
lected all payments of dues and interest on said securities,
including those of said appellee. At the time the company
became insolvent it had 246 members in Wisconsin, and
these members held 1,704 shares of stock in the association,
and 25 of them had procured stock loans amounting in
the aggregate to $7,198.90. The legal rate of interest in
Minnesota is seven per cent. Hale, the general receiver,
distributed nothing to the Wisconsin shareholders. He
took possession of all the assets of the association outside
of Wisconsin..

Plaintiff is the duly appointed, qualified and acting re-
ceiver of the association in Wisconsin, and all of the se-
securities held by the treasurer of said state have been
turned over to him as such receiver. On July 7, 1891,
appellee Darr wrote to the association at its home office in
Minneapolis, stating that he had received two letters from
the state treasurer of Wisconsin; that he did not know what
to do in regard to the matter, and inquired for information.
On July 10, 1891, the association, through its manager at
the home office, wrote to him, advising him to pay no atten-
tion whatever to the letter he had received from the treas-

urer of said state, stating that said official could not compel him to make any payments to him, and that it was his (Darr's) duty to continue the payments as hertofore made to the home office, and that the company would see that he suffered no harm in so doing.

The evidence shows that there are no creditors of the association in Indiana, and that claims in the sum of $64,009.30 have been filed and allowed against appellant as the receiver of said association in Wisconsin. The evidence also shows that after the company became insolvent, one of the stockholders residing in Wisconsin brought a suit in the Dana Circuit Court, seeking to secure the appointment of a receiver to take charge of the assets of said association in said state. In this suit appellant was appointed by the court as receiver. Hale, the general receiver, it appears, was, upon his own motion, made a party to said suit, and demanded the surrender and turning over to him, for distribution, of all securities deposited with the treasurer of Wisconsin. The court refused to order the surrender of these securities to Hale, but ordered that the same be turned over to appellant as receiver for the association in Wisconsin, to be collected and applied for the benefit of the members of the association in that state. From this decree of the court Hale, the general receiver, appealed to the Supreme Court of said state, wherein the decision and decree of the lower court was affirmed. *Lewis* v. *American Sav., etc., Assn.* (1898), 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559. Hale, it appears, removed said cause to the United States Supreme Court on writ of error, but the proceeding on said writ was dismissed by the Supreme Court of the United States.

It is shown that the value of the securities held in Wisconsin at the time the association became insolvent was $100,000; that the value of the securities turned over to appellant as receiver herein is $100,000; that if Receiver Hale had collected all mortgages on deposit with the treas-

urer of Wisconsin, at the time the association became in-solvent, the funds held by him for distribution would have been augmented or increased $100,000; that Receiver Hale has made his final report, and has been discharged from his said trust by the court of Minnesota, by which he was appointed; the total amount of claims allowed the share-holders by him as receiver is $827,408, and he has dis-tributed among the shareholders of the association the sum of $186,166.80; that the money arising out of the loans collected by Hale, as receiver, was distributed by him among the shareholders of the association residing outside of Wisconsin; that sixteen of the Wisconsin shareholders had obtained loans from the association and secured the same by mortgage on real estate; that three of these mort-gages, amounting in the aggregate to $1,600, not having been deposited with the treasurer of the state of Wiscon-sin, were taken possession of by the general receiver, and the proceeds distributed under his receivership.

The laws of Minnesota pertaining to the organization of building and loan associations are set out and made a part of the evidence. Copies of the bond and mortgage in suit, and the assignments thereof, appear in the evidence. The statute of Wisconsin, which required foreign building and loan associations to make a deposit with the treasurer of state of securities of the value of $100,000 before such company could be authorized to do business in that state, was introduced in evidence. It provides, among other things, that no foreign building and loan association shall do business in such state "unless such association shall have and keep on deposit with the state treasurer of Wisconsin, in trust, for the benefit and security of all its members in this state [i. e. the state of Wisconsin] securities of the actual cash value of $100,000, of the kind mentioned in section two of this act, to be approved and accepted by said state treasurer, and held in trust as aforesaid, until all shares of as-sociation held by residents of this state shall have been fully redeemed and paid off by such association, and until its

contracts and obligations to persons and members residing in this state shall have been fully performed and discharged." Section two of said statute, after enumerating of what the required securities to be deposited might consist, also authorizes the deposit with the treasurer of state as securities "personal obligations of members of the association depositing the same taken in the ordinary course of business of such association, and secured by first mortgages on real estate," and provides that all dues or monthly payments, which become payable on stock and mortgages pledged as security on loans, might be collected and retained by the depositing association, so long as such association remained solvent and faithfully performed all contracts with its members.

There is evidence going to show the agency of Vesey, Miller & Company. They were authorized to solicit applications for stock and membership in the association, and to collect admission fees upon the same. Appellee Darr testified at the trial that he applied to Vesey, Miller & Company for a loan of $700, and received the money on August 14, 1890. That $70 was deducted from the $700, as a commission, and also three monthly payments. It was agreed that said appellee had paid every month on stock payments from September, 1890, to February 6, 1896, $3.50 interest and $8.40 dues. Part of these payments were made to Vesey, Miller & Company and part of them to the City National Bank of Goshen. He testified that Vesey, Miller & Company explained to him about this association and said that all members would share equally. He first learned of the existence of the company by seeing the advertisement of Vesey, Miller & Company. The first information he had that the company was doing business in Wisconsin was when he was ordered to make payments to the treasurer of Wisconsin. He first learned that his mortgage was held by the treasurer of Wisconsin about the time the company failed and became insolvent. He did not make very many payments, if any, after he ascertained

this fact. He testified that Vesey, Miller & Company, at the time he obtained the loan and became a member of the company, stated to him that the association was all right and that every member thereof shared equally. He testified that he did not have any certificate of stock at the time of the failure of the company, and has not had any such certificate since he made the mortgage. He never authorized the Wisconsin receiver to file any claim for him with the Minnesota receiver.

In regard to the alleged errors predicated upon the rulings of the trial court on the demurrers to the answer and reply, it may be said that the second and third 1. paragraphs of the latter pleading are in. the main similar. Both are of the nature' of argumentative denials to said appellee's separate answer, and as all the material facts averred in the third paragraph, so far as pertinent, were admissible under the general denial which constituted the first paragraph, .appellant has no ground for complaining of the court's ruling in sustaining the demurrer to the third paragraph of reply. *Jeffersonville Water Supply Co.* v. *Riter* (1897), 146 Ind. 521.

The disposition which we make of this case settles the question that no reversible error was committed by the trial court in overruling appellant's demurrer to the second and fourth paragraphs of appellee Darr's separate answer.

In respect to the method employed by the trial court in determining the amount for which judgment should be rendered in favor of appellant, we are not advised by the record. Counsel for appellant, however, in their brief, inform us that the trial judge in computing this amount charged said appellee with $700, the amount borrowed, and treated the same from and after October 3, 1890—on which date appellee's mortgage and bond were deposited with the treasurer of Wisconsin—as a simple loan of money, and credited upon the debt all the sums paid by said appellee, with six per cent interest from the respective dates of pay-

ment.    On the other hand, counsel for said appellee assert
that the trial court treated the transaction as a simple
loan of $604.80, and computed the interest thereon at seven
per cent per annum, according to the laws of Minnesota,
and in addition to the amount due as principal and interest
added thereto $25 for attorneys' fees.    The view which we
entertain in this case, however, renders immaterial the
method employed by the trial court in arriving at the
amount of the judgment.

We pass to a consideration of the facts established in
this case and the rules of law applicable thereto.    As
shown, the association in question, through its directory,
prior to the time said appellee became a borrowing mem-
ber, in order to enter Wisconsin and be permitted to do
business therein as a building and loan association, had,
under the requirements of the laws of that state, deposited
with the treasurer thereof $100,000 in value of the bonds
and mortgages which it held against its members.    The
bond and mortgage in suit, as shown, were also deposited
with the state treasurer a short time after their execution.
These obligations of the members of the association, under
the broad provisions of the statute of Wisconsin, were de-
posited by the association as a security and were to remain
on deposit and be held by the treasurer of that state as a trust
fund until all of the shares of the association held by resi-
dent members of that state should be fully redeemed and
paid.

Under the statute of Wisconsin according to the holding
of the supreme court of that state in *Lewis* v. *American
Sav., etc., Assn., supra,* these bonds and mortgages,
2.    when deposited with the treasurer of that state,
became a trust fund or security to be held and used
for the benefit solely of the members and creditors of the
association residing in that state.    The court in that ap-
peal said:    "Insolvency of the corporation will not release

the trust or discharge it. * * * This trust was not created for the benefit or indemnity of members, creditors and shareholders of the defendant corporation generally, residing out of the state. These were not within its plan, purpose, or policy. The deposit was required and made in pursuance of a wise state policy, solely for the benefit and indemnity of resident shareholders and creditors and for their protection and advantage only."

The general nature of the business of the association in question, as shown, was "to assist its members in saving and investing money in buying real estate, and in procuring money for other purposes by loaning or advancing, under the mutual building society plan." In fact, the method of business known as building and loan is, in its essential plan and nature, the same all over the world. *Security Sav., etc., Assn.* v. *Elbert* (1899), 153 Ind. 198. Mutuality is the essential or fundamental principle of such an association, and is impressed upon or enters into the contracts between it and its members. *McMurray* v. *Sidwell* (1900), 155 Ind. 560, 80 Am. St. 255; *Eversmann* v. *Schmitt* (1895), 53 Ohio St. 174, 41 N. E. 139, 29 L. R. A. 184, 53 Am. St. 632; 2 Beach, Contracts, §1211.

In the latter work, in the section cited, the author says: "Its business is confined to its own members, its object being to raise a fund to be loaned among themselves or such as may desire to avail themselves of the privilege. This is done by the payment at stated times of small sums in the way of dues, interest on loans, and premiums for loans. Each shareholder, whether a borrower or nonborrower, participates alike in the earnings of the association, and alike assist in bearing the burden of losses sustained. It has what is called a capital stock, but this is only true in a modified sense. Unlike other corporations for profit, a share in a building association has, at its inception, only a nominal value. * * * It is only so far as such an

association serves the purposes above specified and is confined to the objects necessarily involved therein that its acts and contracts are within the powers granted."

In *McMurray* v. *Sidwell, supra,* this court, in considering the character and nature of the National Home Building & Loan Association, organized under the laws of Illinois and domiciled in that state, said: "This association was a coöperative enterprise. It dealt only with its own members. It was a corporate copartnership, so to say. Mutuality and equality were its essential working principles. Every stockholder, whether in Indiana or another state, contributed to a fund in which all had interests in common. If the enterprise had been successful, all would have received dividends proportionate to their investments as stockholders. On insolvency, the assets should be distributed according to the nature and source of the fund and the claims upon it. The fund is the common property of all the stockholders and the claims upon it are demands of all the stockholders for a distribution. The loss should be borne by those who would have shared the profits and in the same proportion." Citing *Marion Trust Co.* v. *Trustees, etc.* (1899), 153 Ind. 96; *Huter* v. *Union Trust Co.* (1899), 153 Ind. 204; *James* v. *Sidwell* (1899), 153 Ind. 697.

The acts of the directors of the association in depositing the bonds and mortgages in question with the treasurer of Wisconsin and thereby creating a trust fund of its assets, as held by the supreme court of that state in the case of *Lewis* v. *American Sav., etc., Assn., supra,* not for its shareholders or members in general, regardless of their place of residence, but solely for the protection, benefit, and indemnity of the shareholders and creditors residing in Wisconsin, certainly operated and served as a necessary result to break down and destroy the mutuality and equality of its members, a principle, which, as heretofore asserted, was impressed upon and entered into

the contracts between the association and its members and the principle upon which the creation of the association was based. It must be presumed that the association, in making the deposits under the laws of Wisconsin, intended the natural or probable consequences of its own acts. *Reagan v. First Nat. Bank* (1902), 157 Ind. 623, 645.

It must be conceded that there was no law requiring the association to enter Wisconsin, to carry on its business therein. Such act on its part was wholly voluntary.

6. It is true that under §2860 of the general statutes of 1894 of Minnesota, relating to building and loan associations, such corporations are required to deposit and keep with the treasurer of that state, or with a duly chartered trust company approved by the public examiner, in trust for their members and creditors, all mortgages or other securities received by them in the usual course of business. The statute provides, however, that "whenever required by the laws of any other state or territory, or nation, all securities taken in such state, territory or nation, by any association, * * * subject to the provisions of this act, and other securities sufficient to allow such association to enter and do business in such state, territory or nation, may be deposited with some officer authorized to receive the same in such state, territory or nation, under the laws thereof, for the benefit of its members and creditors." This statute certainly does not contemplate that the association, in order to enter another state to do business, might do as appellant's association did—deposit its bonds and mortgages as a trust fund solely to protect and indemnify the resident members or shareholders of the particular state, and thereby give to this class of members or creditors a decided preference over all others. The statute does not in terms so provide, and it would be a wide stretch of construction to hold that such is the intent or purpose thereof. Certainly under its provisions it cannot be said to have authorized the building and loan association here

involved to agree in any respect upon depositing its securities in Wisconsin that the proceeds arising therefrom, in the event that the association should become insolvent and cease to be a going concern, might be used and applied to redeem and pay in full the resident stockholders and creditors of that state, to the exclusion of all others. This would operate to break down or destroy all mutuality and equality. In fact, §2880 of the same statute prohibits building and loan associations from issuing any preferred stock. It is unreasonable to assert, under the circumstances, that the legislature intended by other provisions of the act to empower these associations to make or deposit their mortgages, etc., and thereby create a class of preferred stockholders, when by the same act they were expressly prohibited from issuing any preferred stock.

While this is our view in respect to the construction of the statute in question, nevertheless the decision of the supreme court of Wisconsin, in the case heretofore cited, is to the contrary, and appellant, as a special receiver, virtually acting in the interest of the shareholders and creditors residing in Wisconsin, claims to be controlled and governed by the holding in that case. In that suit, as shown, Hale, the general receiver, unsuccessfully sought to have the securities, which had been deposited by the association, turned over to be administered upon by him and distributed equitably among all the association's shareholders and creditors. The insolvency of the association and the appointment of a receiver incapacitated it from further carrying out its contracts with its shareholders. These contracts to that extent were abrogated. The association, when it became insolvent and ceased to be a going concern, was civilly dead, and, under a well-settled general principle of equity, all its property and assets were liable to be transferred to the administration of a court of equity, subject to be treated as a trust fund for the benefit of all of the shareholders and creditors

of the insolvent concern, without distinction as to their place of residence. But, as heretofore said, appellant does not propose to be controlled by this equitable rule, but is governed wholly by the decision of the court of his own state.

It must follow in this case that the rule approved in *Wohlford* v. *Citizens, etc., Sav. Assn.* (1895), 140 Ind. 662, 29 L. R. A. 177, and *Marion Trust Co.* v. *Trustees, etc.* (1899), 153 Ind. 96, in respect to adjusting with equality the losses and expenses among the shareholders of an insolvent building association, is not applicable and cannot be followed. The act of the association, in effect preferring over all other members and stockholders of Wisconsin, must be held, for the reason hereinbefore given, to have resulted in abrogating *ab initio* the contract between appellee and the association; therefore the only equitable method under the circumstances, as it appears to us, is to place appellee and the association in the relation of debtor and creditor, treat or consider the amount of $700 borrowed by him simply as a loan of so much money, and charge him with that amount and six per cent interest thereon, credit as partial payments on the indebtedness all sums paid by him either as interest or stock dues, and render judgment for the remainder unpaid, if any, with a foreclosure of the mortgage. When tested by this method of computation we discover no grounds for the contention of appellant that the amount of recovery in this case is too small. It would be inequitable to require appellee Darr to pay back to the receiver in this case, for the sole benefit of the Wisconsin stockholders, the amount of money borrowed, with interest thereon, and then give him no credit for the stock dues paid, on the ground that he should not escape payment of his part of the losses and expenses under the requirements of the general rule which, as we have previously said, is not applicable under the

particular circumstances herein. As shown by the evidence, said appellee had no knowledge or notice that the association had or was depositing its bonds and mortgages with the state of Wisconsin for the purpose in question, or that the bond and mortgage which he executed had been deposited with the treasurer of state for the same purpose, until after the association became insolvent. Consequently, the claim of appellant that he is now estopped or has waived his right to call in question in this suit the act of the association in making the deposits in controversy, is wholly untenable.

We have considered all of the points presented by appellant in this appeal, but find no reversible error, and being satisfied that the conclusion which we have reached is equitable and right, the judgment is therefore affirmed.