In re GERMAN SAVINGS & LOAN ASS'N.

NATIONAL BANK OF KENTUCKY v. REEDER.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1918.)

Nos. 2380–2384, 2386, 2392.

1. CORPORATIONS ☾370(3)—POWERS—AUTHORITY.

A corporation has only those powers that are expressly given and such others as are necessary to the exercise of the named powers.

2. BUILDING AND LOAN ASSOCIATIONS ☾24—NEGOTIABLE SECURITY—ISSUANCE.

While a building and loan association, which may be characterized as a corporate partnership, may incur debts to carry out its express powers, and of course may give a written acknowledgment thereof, such an association is not authorized, as in the case of other corporations, to issue negotiable bonds, etc.

3. BANKRUPTCY ☾340—CLAIMS—FRAUD.

A claimant, relying on certificates of indebtedness issued by a building and loan association, must show that he was a purchaser in good faith for value, in order to have his claim allowed; it appearing that the certificates were fraudulently issued and the association received no consideration.

4. BANKRUPTCY ☾340—CLAIMS—EVIDENCE.

Mere proof of possession of certificates of indebtedness of a building and loan association, which were fraudulently issued and for which the association received no consideration, is not sufficient to show that claimants were good-faith purchasers for value.

5. BUILDING AND LOAN ASSOCIATIONS ☾40—CERTIFICATES OF INDEBTEDNESS—GOOD-FAITH PURCHASERS.

Where the secretary and general manager of a building and loan association delivered certificates of indebtedness of the association payable to bearer to secure his personal debts, held, that persons so receiving them could not be deemed good-faith purchasers for value.

Appeals from the District Court of the United States for the District of Indiana.

In the matter of the bankruptcy of the German Savings & Loan Association. The claims of the National Bank of Kentucky and others were disallowed on objection of Levi N. Reeder, trustee in bankruptcy, and claimants appeal. Affirmed.

William W. Crawford and Keith L. Bullitt, both of Louisville, Ky., for appellants.

Evan B. Stotsenburg, of New Albany, Ind., and Henry Hornbrook, of Indianapolis, Ind., for appellee.

Before BAKER, MACK, and EVANS, Circuit Judges.

BAKER, Circuit Judge. For many years the bankrupt, organized as a building and loan association under a statute of Indiana, conducted its affairs in the usual and prescribed way. Later, under a resolution of the board of directors, certificates of indebtedness, having the face characteristics of general corporation negotiable bonds, payable to bearer ten years after date, were directed to be signed by the president and

the secretary and to be issued at par by the secretary as the managing officer.

In the bankruptcy court all claims that were based on such certificates, wherein the money had reached the bankrupt, were allowed. No money ever came to the bankrupt from the certificates presented by appellants, and their claims were disallowed. In all these appeals but one the certificates were received by the holders from the hands of the secretary as collateral security for his alleged debts, and in that one the manner of obtaining possession is not shown. The secretary had simply embezzled these certificates and applied them to his own use.

[1, 2] 1. When the bankrupt was organized, the Indiana statute gave building and loan associations only the powers that are commonly known as characteristic of enterprises of that class: To have members who severally take one or more shares of "stock" of a fixed face value; to collect small monthly payments on the stock during a term of years; to levy fines for failure to pay promptly; to loan to members, as moneys accumulate, sums equal to the face of the borrowers' shares; to charge interest that would be usurious between strangers; to charge premiums in addition to interest on the loans; to apportion the net earnings to the stock; to cancel the principal of a borrowing member's indebtedness, the interest and premium charges having been kept up, by canceling his stock when his monthly payments on stock, together with his apportionment of earnings, equal the face value of his stock; and to pay or incur the expenses of conducting that business. Money was to come in only from members in the way of dues, fines, interest, and premiums; was to go out, except for operating expenses, only to members in the form of loans.

If a corporation is to be treated as having a natural person's freedom of action in all directions except those prohibited, it would be senseless for a Legislature to enumerate granted powers; it would be necessary only to list the prohibitions. But the fundamental principle is the converse. A corporation has only the powers that are expressly named and such others as are necessary to the exercise of the named powers. Silence is itself a prohibition. For if a particular power is necessary to the exercise of a named power, it by that necessity becomes itself a named power.

Indiana had various separate incorporation statutes, railroad, mining, manufacturing, commercial, etc. These corporations as a rule were given express authority to bundle up their credits in the form of negotiable bonds and sell them in the money markets. But building and loan associations were not; and the members of this bankrupt association did not themselves undertake to exercise the ungranted power. Are they and the creditors whose money or property actually went into the association bound by the recited actions of the directors and officers? Not unless the power to sell the association's credit by floating negotiable bonds was necessary to the exercise of some granted power.

Building and loan associations have been well characterized as "corporate partnerships." Towle v. American B. & L. Society (C. C.) 61 Fed. 446; Security Ass'n v. Elbert, 153 Ind. 198, 54 N. E. 753. Because the business of such a corporate partnership is confined to its

own members, because a borrowing member is also a lender, interest and premium charges are allowed which would be unlawful between strangers. The dual character of a member eliminates the matter of usury, because until his "stock" matures no one can figure what his loan has cost him. As a matter of common information we know that stocks and bonds of such corporations are not issued, listed, and bought and sold in the exchanges and money markets. To raise capital by floating negotiable securities is counter to the genius of these mutual associations.

Undoubtedly a building and loan association has the implied power to use its credit to the extent necessary to carry out its express powers. It may incur debts for furniture, office supplies, rent, wages, and salaries of employés, and the like. Having incurred a debt, it may of course give a written acknowledgment and promise to pay. But the recovery in such a case should be limited to the debt, and not be based upon the negotiable form of the promise to pay. Towle v. American B. & L. Ass'n (C. C.) 78 Fed. 688; Standard Savings & L. Ass'n v. Aldrich, 163 Fed. 216, 89 C. C. A. 646, 20 L. R. A. (N. S.) 393; Marion Trust Co. v. Crescent Loan Co., 27 Ind. App. 451, 61 N. E. 688, 87 Am. St. Rep. 257; North Hudson Loan Ass'n v. Hudson First National Bank, 79 Wis. 31, 47 N. W. 300, 11 L. R. A. 845.

[3, 4] 2. By the trustee's pleaded and proven objections to the allowance of the claims on the ground that the issuance of the certificates to the claimants originated in fraud and that the bankrupt had received no consideration therefor, the burden was cast upon the claimants to prove that they were good-faith purchasers for value. They merely proved possession of the certificates. That was not enough. Smith v. Sac County, 78 U. S. (11 Wall.) 139, 20 L. Ed. 102; Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Thompson v. Sioux Falls National Bank, 150 U. S. 231, 14 Sup. Ct. 94, 37 L. Ed. 1063; Mills v. Keep (D. C.) 197 Fed. 360; McNight v. Parsons, 136 Iowa, 395, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665.

[5] 3. What evidence there is tends to prove that the claimants were not good-faith purchasers. Pfau, secretary and general manager of the bankrupt, went to the various places of business of the claimants and offered them the bankrupt's certificates, payable to bearer, as security for his personal debts. True, Pfau was the bearer; but each certificate was itself also a bearer—bearer of information that Pfau was the agent to act in the bankrupt's interest. It was not to the bankrupt's interest to pay or secure Pfau's debts. This self-evident collision of Pfau's personal interest with his official duty should have put the claimants on guard. West St. Louis Bank v. Shawnee Co. Bank, 95 U. S. 557, 24 L. Ed. 490; Moores v. Citizens' National Bank, 111 U. S. 156, 4 Sup. Ct. 345, 28 L. Ed. 385; Western Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470; Germania Vault & Trust Co. v. Boynton, 71 Fed. 797, 19 C. C. A. 118; Park Hotel Co. v. Fourth National Bank, 86 Fed. 742, 30 C. C. A. 409; Lamson v. Beard, 94 Fed. 30, 36 C. C. A. 56, 45 L. R. A. 822; Board

of Education v. Sinton, 41 Ohio St. 504; Garrard v. Pittsburgh, etc. Ry. Co., 29 Pa. 154.

In each case the decree is affirmed.