Durward et als. vs. Jewett et als.

## No. 11,408.

WIDOW S. DURWARD ET ALS. VS. MRS. JENNIE JEWETT ET ALS.

In an association like the Iron Hall where all the members, although residing in different jurisdictions, are bound by a common contract to the Supreme Representative of the order, which manages a trust fund for the benefit of the entire membership, if a court at the domicile of the association appoint to it a receiver, on account of its insolvency, it is competent for a court in another jurisdiction to order trust funds, forming a part of the trust funds held by a local branch, to be paid into the hands of the receiver.

It is no objection to such an order that the central authority has made a regulation that only a certain portion of the trust fund shall be forwarded to it at stated times. The insolvency of the association makes the whole fund demandable for the purposes of distribution among those who have acquired rights on it.

APPEAL from the Civil District Court, Parish of Orleans.
King, J.

Morris Marks and Albert Voorhies, Attorneys for Plaintiffs and Appellees, cite Niblack on Mutual Benefit Societies, pp. 156, 157, 167, Secs. 135, 136.

Branch K. Miller, Attorney for Defendants and Appellants, cites 81 N. Y. 508; 129 Mass. 70; 137 Mass. 372; 31 Hun. (N. Y.), 553-4; 24 N. E. 374; 4 Penn. St. 519; 16 Fed. Rep. 14; Faily vs. Taulbee, 55 Fed. Rep. 892.

The opinion of the court was delivered by

McENERY, J. The plaintiffs are members of branch No. 1148 of the Order of the Iron Hall. This society or association is insolvent, and is in the hands of a receiver appointed in the State of Indiana, at its headquarters or domicile at Indianapolis.

The plaintiffs allege that the Iron Hall has ceased to exist, does no business; and, as members of branch 1148, they fear that the officers thereof will send the money, property, etc., of said branch to the receiver in Indiana. They pray for an injunction restraining them from sending said money, etc., beyond the limits of this State. The injunction issued as prayed for, and on its trial was perpetuated, and, in accordance with the prayer of the petition, the property was deposited in court.

Subsequently an order was granted distributing the fund among

the members of branch 1148. The officers against whom the injunction issued resist the same, on the ground that the money belongs to the " Supreme Sitting " of the order—that is, to the entire membership of the order, of which the former is the representative.

The fund in controversy is the reserve fund from assessments made prior to the appointment of a receiver. It is true that the Iron Hall is hopelessly insolvent; but, as it is a corporation, organized under the laws of Indiana, the appointment of a receiver did not destroy its corporate existence, unless there had been a judgment forfeiting its charter and a receiver appointed to wind up its affairs in accordance with the decree. But it does not appear that any such decree of forfeiture has been rendered.

When the receiver was appointed, he undertook, under the supervision of the Indiana court, to manage the affairs of the corporation, substituting the court's administration of its affairs for that of the officers of the corporation. Faily vs. Taulbee, 55 Fed. Rep. 893.

The Iron Hall was organized as a mutual benefit society. Assessments were made for various purposes—to take care of the sick, to pay insurance on the lives of deceased members and to provide a benefit fund for all who had complied with the rules and regulations, of a sum not exceeding one thousand dollars.

All who became members of the order were bound by the rules and regulations, and there was a contract between and among all its members throughout the many States in which the order existed. All who have complied with the rules and regulations have rights upon the reserve fund—the sick, the heirs of deceased members and those who were entitled to the benefit fund shown by certificates against the assessments of which the reserve fund forms a part.

The assessments were made for the purpose of meeting their obligations, and the fund arising thereform is a trust fund held by the the order either immediately or through its branches for destination to its proper uses.

Section 1 of Law II of the order is that twenty per cent. of the amount reserved by each branch on each assessment shall be set aside and retained as a reserve fund, which is declared to be the property of the Supreme Sitting and shall be subject to its control at all times as provided by the order. After the expiration of six years and six months from the date of the organization of the order, one-seventh of the reserve fund, then on hand, shall be called for to pay benefits,

and annually thereafter one-seventh of the reserve fund shall be called in for like purpose.

Section 2 restricts the investment of the reserve to the local branch, and provides for the manner of its investment. Plaintiffs contend that the order having ceased to exist and being no longer able to carry out its objects and purposes, that said fund reverts to the original subscribers of the branch.

This was a trust fund, and held not alone for the benefit of the members of the local branch, but for all the membership of the order. The fact that the trust could not be carried out as originally intended can not deprive these members of the rights which they have acquired on the trust fund. Every member of the order must be to some extent likened to a shareholder in a business corporation. The forfeiture of the franchise does not include forfeiture of property, and when this has been declared extinguished property rights are not destroyed. Courts will so manage the property as to preserve all rights upon it according to law. Morawetz Private Corporation, par. 1033.

And the fact that the legal title to property becomes extinguished by a dissolution of the corporation does not destroy the rights of beneficial owners upon it. *Id.* 1032.

The members of the order, like shareholders, are the beneficial owners of the twenty per cent. reserve fund. All who have paid assessments have an interest in this fund, whether he resides in Indiana, New Jersey, or this State. It was made for a specific purpose, the benefit of which was to inure to the whole brotherhood, and not for any particular branch.

" Equity will always protect the rights of a *cestui que trust* without regard to the strictly legal title; and, therefore, when a corporation is dissolved, a court of equity will recognize and protect the equitable rights of the shareholders, for whom the corporate body as recognized by law was merely a representative, or trustee, and the assets of the dissolved corporation will be treated in equity as a trust fund belonging to the shareholders of the company, subject to the rights of its creditors." Morawetz Private Corporation, 1032.

The organization of the courts of Louisiana, the principles enunciated in the code and the rules of practice enable them to fully carry out this equity doctrine.

36

The Supreme Sitting is unquestionably the *owner* of the fund.  It was held for it by the local branch, and for the purpose of carrying out the trust has the right to demand the fund from the local branch.

The fund was to be called for after the lapse of time in small amounts.  But when the corporation became insolvent and was placed in the hands of a receiver the entire amount became due and demandable in order to satisfy those who had claims upon it.

The fund had been paid in on assessments.  Individual ownership over the amount ceased.  Title was vested in the Supreme Sitting, and the local branch only held it for it, and it did not extinguish ownership, but only regulated a call on it at stated periods.  The inability to carry out this regulation did not cause the fund to revert to those who had paid the assessments.

In the case of Faily vs. Taulbee, 55 Fed. Rep., p. 892, there was a proceeding instituted by the receiver of the Iron Hall to gain possession of the reserve fund held by a local branch in Rhode Island.

The defendants in that case urged what the plaintiffs do here.

The United States district judge in that case said:  "The argument then is that, according to this law, the Supreme Sitting can call for the reserve fund only at certain times and for certain purposes, and therefore the receiver can call it in only at those times and for those purposes, and not for the general purposes of liquidating the whole trust fund.  This argument, I think, rests on a misapprehension of the effect of the laws of the society.  They undoubtedly do impress upon the funds the character of trust funds, and perhaps affect different parts of the fund with different equities, but as to the time and manner of ascertaining and marshaling these equities, and as to the method of administration of the fund accordingly, they must be taken to be abrogated in the case where, as this bill alleges, the society is insolvent."

In an association like the Iron Hall, where all the members of the society, although residing in different jurisdictions, are bound by a common contract to the Supreme Representative of the order which undertakes to manage a trust fund for the benefit of all its members, if a court of the domicile of the order which assumes jurisdiction appoint a receiver on account of insolvency, it is competent for a court in another jurisdiction to order funds, forming a part of the trust funds, to be paid into the hands of the receiver.  *Id.*  The receiver is not here demanding this reserve funds but the injunction

issued on the hypothesis that he might demand them. Hence we have of necessity been compelled to treat the case as though the receiver was plaintiff in a demand for the fund.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed. It is now ordered that the demand of plaintiff be rejected and the injunction dissolved.

Rehearing refused.