## Cowen *v.* Failey, Receiver.

[No. 18,035.   Filed February 2, 1898.]

Mutual Benefit Association.— *Insolvency.— Receiver.— Distribution of Assets to Members Residing in Many States.—Conflict of Laws.*—A mutual benefit association with headquarters in the State of Indiana, but doing business through local branches in many states, became insolvent, and a receiver was appointed by an Indiana court to take charge of and wind up the affairs of the association. Local receivers were appointed in the various states where the association had been doing business. Pending settlement the Indiana court, with a view of making a ratable distribution to all members, ordered all branches of the association, and all local receivers to forward to the principal receiver all funds in their hands. An Ohio court refused to comply with the order, but directed the local receiver to distribute among the members of the local branches within his jurisdiction the funds held by him, which was done. Meanwhile the Indiana court issued an order that all local branches and all local receivers should account to the principal receiver, and pay over to him by a certain time, all funds on hand, or be thereafter

barred from receiving any distribution on the claims represented by them until all others who should have so accounted should first be fully paid. Certain members of the association, within the Ohio court's jurisdiction, appeared in the Indiana court and filed an intervening petition showing that by reason of the order of the Ohio court they could not comply with the requirement of the Indiana court, and asking that the order of the Indiana court be so modified as to allow them to come in and prove their claims, and that the amounts received under the distribution by the Ohio court be charged to them as partial payments. *Held,* that the order of the Indiana court requiring local branches and receivers to account to the principal receiver within a certain time, etc., was nothing more than an interlocutory order, and that the interveners' petition should be granted.

From the Marion Superior Court. *Reversed.*

*W. H. H. Miller, J. B. Elam* and *F. Winter*, for appellant.

*Harold Taylor, Albert Baker* and *Edward Daniels*, for appellee.

HOWARD, C. J.—This case has grown out of litigation connected with the administration of the affairs of the Order of the Iron Hall, a mutual insurance association. *Supreme Sitting, etc.*, v. *Baker*, 134 Ind. 293; *Schmidt* v. *Failey*, 148 Ind. 150, 37 L. R. A. 442. The suit was brought by appellant for himself and eighteen hundred other certificate holders of the Order of the Iron Hall, residing in and near the city of Cleveland, Cuyahoga county, Ohio.

It appears that, as required by the constitution and by-laws of the order, eighty per cent. of each insurance assessment was remitted to the head office of the order at Indianapolis. The remaining twenty per cent., though also under control of the central authority, might be, and generally was, retained by the local branches, unless specially called for by the executive officers. The eighty per cent. constituted the benefit fund, and the twenty per cent. the reserve fund.

On the insolvency of the association, and the ap-

pointment of the appellee as receiver for the supreme sitting, an order was issued requiring all branches, and also all local receivers in the different states, to forward to the appellee all funds in their hands, with the view of making ratable distribution to all members entitled thereto. This order or request seems to have been generally complied with; the courts which had appointed local receivers, in most cases, considering this to be the most simple and appropriate method for winding up the affairs of the association. *Durward* v. *Jewett*, 46 La. Ann. 559, 15 South. 386; *Ware* v. *Supreme Sitting* (N. J.), 28 Atl. 1041; *Baldwin* v. *Hosmer*, 101 Mich. 432, 59 N. W. 432. In *Buswell* v. *Supreme Sitting*, 161 Mass. 224, 36 N. E. 1065, the decision was to the effect that, where there was no question as to conflicting interests of creditors residing in Massachusetts, the fund in that state ought to be forwarded to Indianapolis, where the insolvent estate was in course of administration. A similar decision was rendered in Pennsylvania. *Kean* v. *Supreme Sitting*, 3 Pa. Dist. Rep. 323. In Connecticut it was held, on the contrary, that the receivers in that state were not required to turn over the funds in their hands to the appellee. *Fawcett* v. *Supreme Sitting*, 64 Conn. 170, 29 Atl. 614.

In the court of common pleas for the county of Cuyahoga, Ohio, a receiver was appointed for the local branches of the order, of which branches appellant and the other certificate holders whom he represents were members. After much litigation in the Cuyahoga court, including an unsuccessful effort made by appellants to induce the court to order the funds in the hands of its receiver to be paid over to the appellee, that court refused to order the transfer of such funds to the Indiana receiver, but directed its receiver to distribute the same among the members of the local

branches, which was ultimately done; the certificate holders thus receiving about twenty per cent. upon their claims.

Meanwhile, by order made February 24, 1894, the Marion Superior Court, the court below, in which the principal receivership was pending, directed that all local branches and all receivers who had not already accounted to the appellee and paid over to him the funds in their hands should do so by April 16, 1894, or be thereafter barred from receiving any distribution on the claims represented by them until all others who should have so accounted should first have been fully paid. This order concluded as follows: "The court reserves the right hereafter to alter, amend, or supplement this order as justice may require."

The appellant, being unable, on account of the action of the Cuyahoga court, to comply with the foregoing order, came into the court below on April 16, 1894, with his intervening petition, giving the reasons why he and his associates were unable to comply with the order, and asking that the same might be so modified as to allow them to come in and prove their claims after the distribution should be made in the Cuyahoga court, such distribution in the Cuyahoga court to be charged to them as partial payments on their said claims. No immediate action seems to have been taken on the intervening petition so filed, or upon certain other petitions supplementary thereto, and on October 20, 1894, the appellant filed a second intervening petition, from which it appears that the Cuyahoga receiver had then distributed to appellant and those represented by him about $50,000.00, being twenty per cent. on their claims, such payments being endorsed on their certificates; that those certificates so endorsed, together with proofs of said claims, had

been by leave of the Cuyahoga court withdrawn therefrom to be filed with appellee, in order that a balance might by him be allowed thereon, sufficient to make the payments made and to be made to appellant equal to those made and to be made to other certificate holders whose claims had been or were to be audited and paid by this receiver; but that the appellee receiver had refused to recognize or file the claims of appellant and those represented by him, not because they were imperfect or incomplete in any respect, but because the funds thus distributed by the Cuyahoga receiver had not been turned over to this receiver for distribution.

The petition further states, that at the time of filing the original intervening petition, April 16, 1894, at all times since that date, and now, "said receiver, Failey, had and has on hand, undistributed and not appropriated, or required to pay dividends ordered paid upon claims having precedence of membership claims, such as that of this intervening petitioner, and those in like situation, as mentioned in said intervening petitions, a sufficient amount of the funds of the Order of the Iron Hall, held by him as such receiver, to pay all additional dividends that may be necessary to make this intervening petitioner, and those in like situation, as mentioned in said intervening petitions, receive an equal per cent. of their claims with other members of said order." The prayer is that an accounting be had, and that the amount found due on appellant's and other said certificates, after deduction of amounts so allowed and paid in the Ohio court, be allowed and paid, so that appellant, and those in like situation, may receive the same pro rata share as other certificate holders whose claims are allowed and paid by this receiver, and that all orders of the court heretofore made be so modified as to authorize and

direct the appellee to settle with appellants as if the amounts paid to them in Ohio had been first turned over to this receiver.

To all the intervening and supplemental petitions the court sustained a demurrer. The sole reason for the action of the court seems to have been that the Ohio receiver had failed to comply with the order requiring him to account to appellee before April 16, 1894, and to pay over the money in his hands as receiver of the local branches of Cuyahoga county, in that state.

The order requiring local branches and receivers that desired to participate in the distribution made or to be made in the court below, to account to the appellee, and turn over to him before the date named, all funds in their custody, was unquestionably a proper one to make, and clearly within the discretion of the court. And certainly it cannot be matter of doubt that members of the association, wherever residing, who desired to participate in the distribution, should comply with all proper orders which the court might make in the course of such distribution. This order was necessary for the orderly closing up of the business of the receivership; and if the money in charge of the court and its receiver were, in consequence of such order, distributed to those who had complied therewith, those who had neglected or failed so to comply with such order could have no reason to complain that there were no funds left to apply on their belated claims.

We do not think, however, that the order of the court was anything more than an interlocutory decree, subject to modification by the court at any time. Indeed, the order, by it own terms, professes to be subject to modification at any time, "as justice may require." The record itself shows that at different times,

in furtherance of equitable settlements with certain local receivers, the time for accounting was extended. On June 7, 1894, time for accounting, as to certain certificate holders, was extended from April 16 to June 30, 1894. So, on June 20, 1894, local branches in Hamilton county, Ohio, were given time for accounting until July 16, 1894, and on June 30, 1894, certain receivers in other states, owing to delays in the courts of those states and other causes, were given time to account until September 30, 1894. As late as February 6, 1895, a settlement made with Maryland receivers was approved. Finally, on May 20, 1895, the court extended the time for accounting on the part of certain branches in Pennsylvania and elsewhere to June 10, 1895. Even, therefore, if such an order as that of February 24, 1894, fixing April 16, 1894, as the limit of time within which accounting with appellee should be had by those wishing to be treated as distributees of the funds in his hands, could in any case be treated as a final order, and not subject to modification, certainly it cannot be so treated here. It does not profess to be such a final order, nor has the court itself so treated it. See *Wilder* v. *Keeler*, 3 Paige 164; *People* v. *Remington*, 12 N. Y. Supp. 824; *Grinnell* v. *Merchants Ins. Co.*, 16 N. J. Eq. 283.

Neither is it a question as to whether it would not have been better if the common pleas court of Cuyahoga county, Ohio, in the spirit of comity, had complied with the request of the Marion Superior Court, and ordered the funds in the hands of its receiver to be turned over to the appellee for distribution. The question is, rather, what should a court of equity do under the circumstances shown in the record? Evidently, the rights of the parties ought to be considered, irrespective of errors or mistakes that may have been heretofore made. The funds in the hands of the

appellee have been, in part, made up of the eighty per cent., or benefit fund assessments paid by appellant and his 1,800 associates; and it is not equitable, so long as the money thus contributed by them yet remains in the custody of the court, to pay it out to other certificate holders. The only reason given for such proposed action is that the Ohio certificate holders have received back the twenty per cent., or reserve fund assessments which they had themselves paid into the funds of the order. Can it make any difference in equity whether they retained this twenty per cent., or first paid it to appellee, in order that he might be able to pay it back to them? The twenty per cent. is accounted for, it is charged to them on their certificates. Ought they not, therefore, to receive, also, their pro rata share of the eighty per cent. benefit fund paid by them, in common with all the other certificate holders of the order?

Of course, appellant, and those represented by him, must fully account for what they have received; and due allowance must also be made for any failure, if any there be, on their part, to pay into the funds of the order any assessments paid by other certificate holders, and also any unnecessary expenses incurred by them in the administration of the funds in Ohio. But, with these deductions made, we are unable to see why any balance in the hands of appellee of funds contributed by appellant, and those for whom he appears, should not be paid to them, quite the same as to other certificate holders. They must fully account to the appellee, quite the same as any other certificate holders, and then receive like payment as to balance due.

Mr. Wharton, in his Conflict of Laws (2d ed.), section 624 (a), says: "When there are several distributions opened in separate states, a creditor who has ob-

tained a dividend in one of these distributions must account for it when claiming a dividend in another distribution. He will only be entitled to as much as brings him on an equality with other creditors." See, also, Wharton on Conflict of Laws, section 798. This text is well supported in decided cases. *Ex parte Banco De Portugal*, L. R. 11 Ch. Div. 317; *Ex parte Wilson*, L. R. 7 Ch. App. 490; *In re Bugbee*, 9 Nat'l Bank Reg. 258; *Tyler* v. *Thompson*, 44 Tex. 497; *Hays* v. *Cecil*, 16 Lea (Tenn.) 160; *Loomis* v. *Farnum*, 14 N. H. 119. In this jurisdiction, also, a nonresident petitioner was not allowed to share in a fund in the hands of a fiduciary until it should first be made to appear what amount, if any, he should recover on his claim out of proceeds of property of the same estate attached by him in his own jurisdiction. *Combs* v. *Union Trust Co.*, 146 Ind. 688.

While appellant and his associates are not creditors, in the strict sense of the term, but rather members of an association, with right to their distributive shares of a fund created by them in common with other members; yet the foregoing authorities, in analagous cases, make it clear that their right to a pro rata distribution was not wholly cut off by their neglect to comply with the reasonable order of the court requiring them to account to the appellee and pay over to him the funds in their hands on April 16, 1894.

The judgment is reversed, with instructions to overrule the demurrer of appellee to the intervening petitions of appellant, and for further proceedings.