O'MALLEY *v.* HANKINS ET AL.

[No. 26,388.  Filed February 22, 1935.]

Clarence C. Wysong, Clinton H. Givan, Wm. H. Thompson, Albert L. Rabb, and Thomas D. Stevenson for appellant.

Philip Lutz, Jr., Chalmer Schlosser, Burke G. Slaymaker, and Samuel D. Miller, for appellees.

FANSLER, C. J.—Appellees brought this action seeking the appointment of a receiver for the Missouri State Life Insurance Company, a corporation organized under the laws of the State of Missouri. Summons was issued and served on the Auditor of State, and on a representative of the company at its office in Indianapolis, returnable October 2, 1933. On September 30, 1933, before any pleadings were filed by the defendant, receivers were appointed upon evidence introduced by plaintiffs. The evidence consisted of a certified copy of the judgment and decree of the Circuit Court of the State of Missouri within and for the city of St. Louis, entered on the 28th day of August, 1933, as follows:

"R. Emmet O'Malley, Superintendent of the Insurance Department of the State of Missouri, v. Missouri State Life Insurance Company, a corporation.

"This cause coming on for hearing before the court this 28th day of August, 1933, upon plaintiff's

verified petition, the Entry of Appearance and Answer of defendant, is heard by the Court upon the pleadings filed herein and upon the evidence and proof adduced, and the Court being fully advised in the premises doth find that the allegations of said plaintiff's petition are true; that defendant is insolvent; that its liabilities exceed its available assets, and that its further operation is hazardous to the public and to those holding its policies, and that plaintiff herein is entitled to the relief prayed for in his petition filed herein.

"WHEREFORE, the Court renders and enters its judgment herein declaring that the defendant Company is insolvent and in a hazardous condition.

"It is further ordered, adjudged and decreed that all of the assets of the defendant Company are hereby vested in fee simple and absolutely in the said R. Emmet O'Malley, as Superintendent of the Insurance Department of the State of Missouri, and his successors in office. The said Superintendent shall immediately take possession of said assets, together with all books, papers and records of said Company, and shall collect all debts and claims due it, and shall dispose of and sell all assets and settle all claims according to law, and under order of the Court, and shall settle and wind up the affairs of said defendant Company under order of the Court with all due and proper expediency; shall prosecute and defend actions in law or equity to protect and preserve the assets formerly held by or due the defendant company; and for all such shall employ counsel and necessary assistants.

"It is further ordered, adjudged and decreed that the Missouri State Life Insurance Company, its officers, agents, servants and employes, immediately deliver possession of all assets of said Company, including its books, papers and records to the said Superintendent of Insurance, and that said Company, its officers, agents, servants and employes are hereby permanently enjoined from the further prosecution of the business of said Company, or from interfering with the possession, administration and disposition of the assets of said company by the said Superintendent of Insurance."

There was no specific evidence that the property of the company within the State of Indiana was in jeopardy

or in danger of being lost or destroyed. Receivers were appointed, and bond fixed in the sum of $5,000, which was filed on the same day. On October 4, 1933, the Missouri State Life Insurance Company, through attorneys acting for it, prayed and was granted an appeal upon filing an appeal bond in the sum of $5,000, which was done. A part of the record brought here by *certiorari* shows that this bond is on file in the clerk's office, with the notation "which bond is approved by the court and the appeal granted. Defendant granted 6 days to file bill of exceptions," followed by the name of the judge of said court, with a line through it and the words "Judge of Marion Superior Court Room 2," with a notation that the judge's name was stricken out in ink. It is shown that this bond, approved by the judge, was tendered and stamped filed in the clerk's office of the court, although it was not shown on the order book. On October 5, 1933, the day following the filing of this appeal bond, an entry was made as follows:

"The court on its own motion now increases the Receiver's Bond to $25,000.00."

On October 9, 1933, nine days after the entering of the judgment, and five days after an appeal was prayed and granted, and the appeal bond filed, the judge entered an order, the pertinent part of which is that the court "on its own motion sets aside the order heretofore issued granting appeal to the Supreme Court of Indiana, upon the filing of bond in the sum of Five Thousand Dollars ($5,000.00), and the court now further orders that said appeal be granted upon the filing of an appeal bond in the sum of Thirty Thousand Dollars ($30,000.00)." On the same day the court approved and signed the bill of exceptions and ordered it filed; and on October 10th, the last day for perfecting the appeal under the statute, a transcript of the record, with an assignment of errors,

was filed in this court and docketed. On October 9th, after the court had set aside its order granting the appeal, the receivers undertook to take charge of the property of the company on the theory that their authority to do so was no longer suspended.

Section 1302, Burns 1926, §3-2603, Burns 1933, §1157, Baldwin's 1934, provides that, in cases in which a receiver is appointed, the party aggrieved may, within ten days thereafter, appeal from the decision to this court, and that, upon the filing of an appeal bond with sufficient surety, in the same sum as has been required of such receiver, the authority of the receiver shall be suspended until the final determination of the appeal. When the order fixing the appeal bond was made, and the bond filed and approved, the trial court was divested of jurisdiction, and the appeal filed here within ten days of the judgment is properly completed.

On the day the transcript was filed in this court appellant filed a petition for a writ of *certiorari* to bring up the appeal bond heretofore referred to. The writ was granted, and that part of the record is now here. On October 16, 1933, appellant filed in this court a petition asking that the receivers appointed below be enjoined from acting pending a determination of this appeal. On October 19, 1933, appellees moved to abate appellant's application for injunction, based upon the fact, which was made to appear, that on the 7th day of October, 1933, the Circuit Court of the city of St. Louis, in the State of Missouri, in the cause in which the judgment above referred to was rendered, entered an order and decree dissolving and terminating the Missouri State Life Insurance Company. On the same day, R. Emmet O'Malley, as Superintendent of the Insurance Department of the State of Missouri, petitioned to be substituted as appellant, and to this petition appellees appeared specially and answered. In support of the petition to be

substituted, it was established that, with respect to insurance companies, such as the Missouri State Life Insurance Company, the statutes of the State of Missouri provide:

"Sec. 5947. Title of assets to vest in superintendent. Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee simple and absolutely in the superintendent of the insurance department of this state, and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policyholders of such company and such other persons as may be interested in such assets."

"Sec. 5948. Disposition of assets. The said superintendent, upon the rendition of judgment as aforesaid, shall take immediate possession of the assets, books and papers, and proceed to collect the debts and claims due such company, unless disposition of the assets of said company is made by a reinsurance of the company as provided in this chapter. Said superintendent shall sell and dispose of the real estate and other property of such company, subject to the approval of the court, and may execute in his own name, as superintendent of the insurance department, all necessary and proper conveyances of the same; he may also, in his own name, as such superintendent, maintain and defend all actions in the courts of this or any other state, or of the United States, relating to such company, its assets, liabilities and business."

On the 28th day of August, 1933, the judgment above referred to, as having been introduced in evidence below, was entered by the Circuit Court of the city of St. Louis, State of Missouri, and on October 7, 1933, in the same cause of action, the following order was entered:

"It is ordered, adjudged and decreed by the court that the corporate entity of defendant, Missouri State Life Insurance Company, a corporation heretofore organized and existing under and by virtue of the laws of the State of Missouri, be, and the same is hereby forever dissolved, terminated and

ended; and that the charter of said corporation be, and the same is hereby forfeited and cancelled and for naught held."

This latter order was authorized by Section 5945, R. S. Missouri, 1929.

In opposition to the petition for injunction, and for the substitution of the Superintendent of the Insurance Department of the State of Missouri as appellant, it is asserted (1) that this court is without jurisdiction, for the reason that the Missouri State Life Insurance Company ceased to exist before the appeal was filed in this court, and that the persons attempting to perform that act were not authorized under the law to act on behalf of the company; (2) that the order sought to be appealed from was entered on the last day of the September Term of the Superior Court of Marion county, and that since no appeal was prayed, or appeal bond filed on that date, and no time allowed within which to file bond at the September Term, no valid appeal can be taken; (3) that the substitution of the Superintendent of the Insurance Department of the State of Missouri cannot be granted because it is asked after the time when the right of appeal has expired; (4) that the Superintendent of Insurance has no interest in the property of the Missouri State Life Insurance Company, for the reason that the statute of Missouri is not self-executing beyond the territorial limits of that state, and, therefore, title to the property of the company in Indiana did not pass, and cannot pass, to the Superintendent of the Insurance Department of the State of Missouri, without action by a court of competent jurisdiction in this state; (5) that the case of *Relfe* v. *Rundle* (1880), 103 U. S. 222, 26 L. Ed. 337, construing the Missouri Statutes referred to above, is not controlling in this case because at variance with the decision of the Supreme Court of Missouri in *State ex rel. Hyde* v. *Falkenhainer* (1925), 309

Mo. 381, 274 S. W. 722, which appellees contend holds that the Superintendent of the Insurance Department is nothing more than a receiver for a court of equity; (6) that the Superior Court of Marion county had the right to increase the appeal bond, and that it did not lose jurisdiction of the case for that purpose until the transcript of the record and assignment of errors were filed in this court.

As to appellees' first and third propositions it must be remembered that this action, in strictness, is against the property of the Missouri State Life Insurance Company. Equity acts specifically. The only purpose of the action is to appoint a receiver to manage and control the disposition of assets. It is true that, after the appeal was prayed and the bond filed, and before the filing of the transcript in this court, the corporation, a fictitious person, ceased to exist. If the appeal were from a judgment by an unsuccessful plaintiff for damages in an action for personal injury, the appeal would be dismissed because the question would be moot. But it is otherwise if the cause of action survives. Section 710, Burns 1926, §2-3216, Burns 1933, §497, Baldwin's 1934, provides that:

> "710. Death no abatement. The death of any or all the parties shall not cause the proceedings to abate; but the names of the proper persons substituted, upon consent or upon notice, the cause may proceed."

For the purpose of this statute, a vacation appeal is deemed taken when the notice is given, and a term time appeal is deemed taken when the appeal is granted by the trial court and the appeal bond filed. *Bruiletts Creek Coal Co.* v. *Pomatto* (1909), 172 Ind. 288, 88 N. E. 606.

Appellees contend that it is as though the Missouri State Life Insurance Company had died before the

filing of the transcript. The analogy is not perfect, as the judgment below operates *in rem*, not *in personam*. But, if the analogy be granted, it is well settled that, where the appellee, a natural person, in an action *in personam*, dies after the granting of a term time appeal and the filing of bond, but before the transcript and assignment of errors are filed, the naming of the deceased appellee in the assignment of errors is in a sense a mere irregularity which could not affect the substantial rights of the parties, and that the assignment of errors could be amended by substitution upon application. We see no substantial difference in the situation where the appellant has died, and the rights under the judgment survive against his successors in title. Nor is such a rule inconsistent with the provisions and purpose of our practice code. After the appeal has been taken and the bond filed, the trial court has no jurisdiction to modify the judgment or to substitute parties. And until the transcript and assignment of errors are filed in this court there is no cause pending in which the substitution can be made. The whole tenor of the code indicates an intention that in such cases the rights of the parties shall not be lost; and, where the judgment affects property, justice demands that those who succeed in title shall have a right to present the questions saved by their predecessor in title. The successor in title may file a transcript or assignment of errors, or, if it is filed by another, by asserting his rights he may have advantage of it.

It has been held that one who intervened after judgment appointing a receiver, and moved to set the order aside, may appeal. *State* v. *Union National Bank* (1896), 145 Ind. 537, 44 N. E. 585.

The order appointing the receivers was entered on the 30th day of September, 1933, which was the last

day of the September term of court. Exception ██ was taken. Thereafter, on the 4th day of October, 1933, in the October term, an appeal was prayed, bond fixed at $5,000, and the bond and sureties approved. The record recites: "Come the parties and the defendant prays an appeal." There was no notice of the appeal to appellees, either before or after the filing of the transcript in this court. It is appellees' contention, by their second proposition, that, under this state of facts, no appeal was perfected; that it cannot be treated as a term time appeal because the appeal was not perfected and bond approved at the term in which the order was made; and that it is insufficient as a vacation appeal for want of notice. Section 3-2603, Burns 1933, §1157, Baldwin's 1934, provides:

> "3-2603. Appeal in ten days. In all cases hereafter commenced or now pending in any of the courts of this state, in which a receiver may be appointed or refused, the party aggrieved may, within ten (10) days thereafter, appeal from the decision of the court to the Supreme Court, without awaiting the final determination of such case; and in case where a receiver shall be or has been appointed, upon the appellant filing an appeal-bond with sufficient surety, in such sum as may have been required of such receiver, conditioned for the due prosecution of such appeal, and the payment of all costs or damages that may accrue to any officer or person by reason thereof, the authority of such receiver shall be suspended until the final determination of such appeal."

It will be noted that the first clause provides for the appeal; the second provides for staying the operation of the order. No method of perfecting an appeal is provided for in the statute, and we must look to those provisions of the code in *pari materia* to determine what steps are required to be taken. This does not mean, however, that, in order to perfect an appeal under this section, appellant must also come within the provisions

of some other statute providing for appeals. We may look to other statutes, however, and construe them with this statute in determining the legislative intention as to the method of perfecting an appeal. It must be remembered that the statute in question provides for an appeal from an interlocutory order, and not from a final judgment, and that courts have power to make such orders in term, or in vacation, irrespective of terms, and with or without notice, and before formal issues have been made, and before the completion of statutory service. The cause in which the order is made remains *in fieri*. Upon appeal the court will not pass upon the sufficiency of the complaint, but only upon the sufficiency of the showing of necessity for a receiver. The statute has been construed as requiring that the bond be approved by the court, and that the transcript be filed in this court within ten days after the order is entered, both of which were done in this case. There was an order of the court below granting the appeal. There are two methods provided by statute for perfecting appeals from final judgments. The so-called term time appeal is taken by praying an appeal at the term in which the final judgment is entered, and having the appeal bond fixed and sureties approved by the court. The so-called vacation appeal can be taken within 180 days after judgment, by giving notice below, or by procuring notice to be given by the clerk of this court after the transcript is filed. The theory of the term time appeal statute is that, as all the parties to the action are deemed to be in court for all purposes during the term at which the judgment is entered, and, since the court has control over its record and judgments during the term, no notice is necessary since the parties are bound to take notice of any steps taken in the case. *Cole* v. *Franks* (1897), 147 Ind. 281, 46 N. E. 532.

After the term at which a final judgment is entered,

it is beyond the control of the trial court. The parties are no longer bound to take notice of the record, and hence the statute requires that notice be given of an appeal taken after the term.

In *Miller* v. *Burket* (1892), 132 Ind. 469, 32 N. E. 309, this court had under consideration an appeal from an order granting a temporary injunction in vacation. The appeal was sought to be perfected under a statute similar to the one here involved. There appears to have been no notice. The court held that the filing of a bond in the prescribed penalty, within the time limit, in vacation, and the approval of the bond by the clerk as in other cases of vacation appeals, was sufficient. Concerning the case, it is said in *Cole* v. *Franks, supra*:

"In that case, however, as appears from the opinion filed, both parties were present at the making of the interlocutory order, and the appellant at the time appealed therefrom. Such appeal, in the presence of the adverse party, was itself notice to the party concerned. The case was not unlike that of a term time appeal from a final judgment. There, the statute does not require notice of appeal, as all the parties are held to be in court for all purposes." The court, continuing, said:

"If the appeal from the interlocutory order is taken in term time, or if both parties are otherwise shown to be present at the time when the appeal is taken, whether that be in term or in vacation, then there could be no need of further notice. But if the appeal is taken in vacation and in the absence of the adverse party, there can be no reason why notice should not be given quite the same as provided for in the case of vacation appeals from final judgments."

In this case it will be noted that the appeal was prayed and the bond fixed and approved at a term following the term at which the order was made. The case was still *in fieri*, and, therefore, all parties are deemed to have been in court for all purposes. The record shows that the parties were in court. Thus

under the policy of the code, that no notice is required while the cause is *in fieri,* and the appeal is prayed, and bond fixed and approved by the court, there would seem to be no basis for the conclusion that the Legislature intended that notice should be given as in case of a vacation appeal.

We approve and adopt the statement of Dausman, J., in *Ayrshire Coal Co.* v. *Thurman* (1920), 73 Ind. App. 578, 127 N. E. 810:

> "It is the policy of the law that controversies between litigants shall be determined on the merits, if that can be done in fairness to all concerned. To that end the provision of the Code is liberally construed."

An appeal from an order appointing a receiver is properly taken and perfected where the record shows an appeal prayed in term time, and the amount of the bond fixed, and the bond and sureties approved by the court, in term time, whether at the term in which the order was made or at a succeeding term, or where the record shows that an appeal was prayed in vacation, and the amount of the bond fixed, and the bond and sureties approved by the court, when all of the interested parties were in court. Such an appeal must be perfected by filing a transcript of the record in this court within ten days of the date when the order was made.

Appellees' propositions four and five are upon the theory, as we understand it, that the Superintendent of Insurance is merely a receiver and officer of the court appointing him, and that, since jurisdiction of that court does not extend beyond the State of Missouri, its orders are not effective in Indiana; that title to the property of the company within and without the State of Missouri is still in the company, and that control by the Superintendent of Insurance is

merely the control of the court of equity appointing him.

It seems to be conceded that the case of *Relfe* v. *Rundle, supra,* supports a contrary contention; but it is contended that it is at variance with the decisions of the Supreme Court of Missouri, which are to the contrary, and that we are bound by the construction placed upon the statute by the latter court. The Missouri statutes involved here were before the court in *Relfe* v. *Rundle, supra.* Relfe was the Superintendent of Insurance of the State of Missouri, and was seeking to remove an action brought by a policyholder in the State of Louisiana to the Federal Court. The United States Supreme Court said, p. 225:

"Relfe is not an officer of the Missouri State court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dispose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the State, and as such represents the State in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs.

"We are aware that, except by virtue of some statutory authority, an administrator appointed in one State cannot generally sue in another, and that a receiver appointed by a State court has no extra-territorial power; but a corporation is the creature

of legislation, and may be endowed with such powers as its creator sees fit to give. Necessarily it must act through agents, and the State which creates it may say who those agents shall be. One may be its representative when in active operation, and in full possession of all its powers, and another if it has forfeited its charter and has no lawful existence except to wind up its affairs. No State need allow the corporations of other States to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs both in life and after dissolution.

"By the charter of this corporation, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the State, and he was charged with the duty of winding up its affairs. Every policyholder and creditor in Louisiana is charged with notice of this charter right which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, impliedly agreed that if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the State should represent the company in all suits instituted by them affecting the winding up of its affairs. Relfe, therefore, became, by operation of law, the successor of the corporation in the litigation these appellees instituted in Louisiana."

The opinion of that court carries great weight, and an examination of the provisions of the Missouri code covering insurance corporations discloses that, while the Superintendent of Insurance does not take title until a court of competent jurisdiction has determined that the insurance company is insolvent and dissolves it, and

while it is required that certain of his activities in the sale and disposition of the property of the company, and reinsuring its policyholders, must be approved by the court, it is found that approval by the court of reinsurance contracts, without the approval of the superintendent of insurance, is ineffective; and there are other provisions that indicate that the action of the court is merely a limitation upon the powers of the superintendent, and that the court is not the source of his power and authority, and that title and authority flow from the statute and not from the court. Appellees do not contend that the rule laid down in the case quoted from is unsound, but assert that the construction put upon a statute of another state by a court of last resort of that state is controlling, and they quote the opinion in the case of *State ex rel. Hyde* v. *Falkenhainer, supra,* to the effect that:

". . . the Superintendent of Insurance is nothing more than a receiver for a court of equity, and his conduct is governed by equitable rules, having of course due regard for the statutes.

"The fact that the court should appoint the Superintendent of Insurance to take charge of the assets does not change the situation that he is a receiver of the court, and under the court's control."

But appellant cites the case of *State ex rel. Missouri State Life Insurance Co.* v. *Hall* (1932), 330 Mo. 1107, 52 S. W. (2nd) 174, which was an original action in the Supreme Court of Missouri, seeking a writ of prohibition on the relation of the Missouri State Life Insurance Company against the Judge of the Circuit Court of the city of St. Louis, prohibiting the enforcing of an order appointing receivers for that company. The writ issued. The court stated, p. 1116, among other things:

"On dissolution of the company, the absolute title to its assets is vested in the superintendent for the benefit of creditors, policyholders, and others inter-

ested, . . . and, under certain conditions, he may reinsure the business of an insolvent company. . . . It is conceded that the State may through administrative officers supervise and regulate insurance companies in aid of solvency. If so, it has the power to protect those interested, in the event of insolvency. It is a valid exercise of the police power through administrative officers. . . . The Superintendent of Insurance is the administrative officer in charge of that interest, and courts are without authority to interfere with his administration of the Code."

And it seems to have been contended that the code did not provide an exclusive method of settling the affairs of insolvent insurance companies, and that courts still have power. The court said, after citing sections of the statute:

"In other words, the Legislature intended to dispense with the services of receivers for insurance companies.

"It follows that the Insurance Code provides an exclusive remedy, and respondent judge was without authority to appoint receivers."

It is difficult to reconcile these two cases from what appears on the face of the opinions. The latter opinion does not mention the former. We are, however, unable to reconcile the latter opinion with the theory that the superintendent of insurance is a mere equity receiver. We are unable to see how such a theory can be reconciled with the conclusion of the court that the statute was intended to dispense with the services of receivers of insurance companies. We, therefore, conclude that the superintendent of insurance must be treated as having that status described in the opinion of the United States Supreme Court above quoted from, and as having been vested with title to all the property of the Missouri State Life Insurance Company as commissioner of insurance, and that the title is not vested in the court through him as its officer and receiver. Concerning a statute in all

respects similar to the Missouri statute, the United States Supreme Court recently said:

"In our judgment, the statutes of Iowa have made the official liquidator the successor to the corporation, and not a mere receiver. (Authorities.) His title is not the consequence of a decree of a court whereby a corporation still in being has made a compulsory assignment of its assets with a view to liquidation. (Authorities.) His title is the consequence of a succession established for the corporation by the law of its creation. (Authorities.) So the lawmakers have plainly said. So the Iowa court adjudged in decreeing dissolution.

"We think the Supreme Court of Montana denied full faith and credit to the statutes and judicial proceedings of Iowa in holding, as it did, that the petitioner was a receiver deriving title through a judicial proceeding, and not through the charter of its being and the succession there prescribed." *Clark* v. *Williard* (1934), 292 U. S. 112, 54 S. Ct. 615, 120; see *Clark* v. *Williard* (1935), 294 U. S. 211, 55 S. Ct. 356.

By their sixth proposition, appellees contend that the trial court might set aside the order granting an appeal and require an increased bond, providing the bond required of the receivers was increased, at any time before the transcript of the record and assignment of errors were filed in this court. We cannot concur in this view. The prayer for an appeal is a formality. The right to appeal is granted by statute. It cannot be denied by the trial court. The prayer amounts to no more than a notice to the court and adverse parties that an appeal is to be taken. The statute fixes the amount of the bond, and requires that it correspond to the amount of the receiver's bond. When the bond has been fixed, and the sureties and bond approved by the court, the court is without further jurisdiction concerning the terms upon which the appeal is taken. It follows that, under the statute, the authority of the receivers

was suspended by filing of the original appeal bond, and they exceeded their authority in taking possession of the property involved pending the appeal.

For the reasons indicated, the petition of R. Emmet O'Malley, as Superintendent of the Insurance Department of the State of Missouri, to be substituted as appellant, and appellant's petition to enjoin the receivers from acting pending this appeal, were sustained, and appellees' motions to abate and to dismiss the appeal were overruled.

Appellees contend that no question is saved for the reason that the appellant's exception taken in the court below is in gross in respect to the court's refusal to transfer the cause to the United States Supreme Court, to the court's refusal to approve the bond for such transfer, and to the court's judgment appointing receivers and fixing their bond. The objection is technical and is not sustained by the record. While all of these matters were passed upon on the same day, there was a final judgment as to the petition to remove before the court took up the petition for the appointment of a receiver, and the exception follows the judgment upon the latter question.

In the case last cited it is said:

"Iowa may say that one who is a liquidator with title, appointed by her statutes, shall be so recognized in Montana with whatever rights and privileges accompany such recognition according to Montana law. For failure to give adherence to that principle we reversed and remanded when the case was last before us. Iowa may not say, however, that a liquidator with title who goes into Montana may set at naught Montana law as to the distribution of Montana assets, and carry over into another state the rule of distribution prescribed by the statutes of the domicile."

In *Clark* v. *Williard, supra,* first cited, it was pointed out that the question of whether the title of a statutory

liquidator will prevail over executions in attachment outside of the state of his appointment is involved in confusion with much conflict of decision. Many jurisdictions lay down the rule that such a liquidator will prevail without exception. There are others, however, of which the United States Supreme Court is one, as indicated by the cases cited, which adhere to the rule that the state in which the property is located, to which title is asserted by the liquidator, may declare a contrary policy by statute or decision. We have here involved no question of a citizen of this state asserting a lien or other right to preference against the property of the company located in this state.

Our attention has not been called to any constitutional or statutory provision in this state that would limit the effect of the statutes of Missouri upon the contracts of the company. It is contended, however, that this state has adopted a policy of appointing a receiver to control the property of insolvent foreign corporations within this state until all domestic claims have been satisfied. But we find no evidence of such a policy.

In *MacMurray* v. *Sidwell* (1900), 155 Ind. 560, 58 N. E. 722, this court held that, where the assets of a foreign building and loan association located within this state exceeded the claims of domestic creditors, so that Indiana creditors might have been paid in full, while other creditors were not, the Indiana creditors were not entitled to a preferential claim. It is said in the opinion:

"It is only by distributing all the assets among all the stockholders that equity can be done, and this is the guiding principle. In a situation like the present one, comity requires that the court of the insolvent's domicil have the lead."

Nor do we find any sound reason for such a policy in the absence of any provision in the statute of the state

of a foreign company's domicile discriminating against non-residents of that state, or against residents of this state. In cases of insolvency of domestic corporations, and their affairs are liquidated by courts of this state, non-residents of this state are permitted to file their claims and participate upon terms of equality with domestic creditors. As we understand it, residents of Indiana, who are policyholders or creditors of the Missouri company, will be treated upon terms of equality with residents of Missouri and other states in liquidation of the affairs of the company under the Missouri statute, and there is no suggestion to the contrary.

We have carefully examined the evidence, and the verified petition for the appointment of receivers, and the verified intervening petitions. Nowhere do we find any evidence that the Missouri State Life Insurance Company had an substantial amount of property within this state. The petitioners content themselves with alleging that there is a large amount of property which may be discovered. The amount of the receiver's bond fixed by the trial court at $5,000, and afterwards raised to $25,000, would indicate that the trial court had no evidence or suggestion of any considerable assets within this state. It does appear that the annual premium income of the company received and collected from policyholders residing in this state, upon policies written and delivered in the state, is not less than $395,000; that the policies in force in Indiana total more than 7,000, and amount to almost $12,000,000; that the assets of the company approximate $150,000,000; "that a large amount" of said assets are located outside of the state of Missouri; that the company transacted business, and has contracts, in more than twenty states; but no specific assets are referred to as being located within the State of Indiana. Our statute pertaining to the application of foreign insurance companies to transact business in

Indiana requires that the company have a large amount of funds invested in government securities. It does not require that those securities be held or kept within this state. Presumably such assets are kept in the state of the domicile of the company. It is not unreasonable to assume that the bulk of the company's assets are located in the State of Missouri. It is clear from the pleadings that appellees thought of premiums which would become due upon insurance policies as assets which might be collected by the local receiver, but the collection of such funds necessarily implies the obligation of continuing liability under the policies. Such premiums might not equitably be collected and disbursed in the payment of accrued claims, ignoring the rights of the policyholders paying the premiums to have reserves created for the payment of any obligations that might accrue upon their policies. Such a procedure in the courts of the twenty states in which the company did business, outside the state of its domicile, would result in twenty courts engaging in the insurance business, and courts of equity will not engage in carrying on business except in certain cases where the business is kept alive until it can be disposed of as a going concern. If the courts of Indiana may equitably take possession of the assets of the company within Indiana for the benefit of Indiana creditors, why cannot the courts of Missouri, or the insurance commissioner of that state, take possession of the assets of the company (which we assume to be the principal assets) located in the State of Missouri for the benefit of the Missouri policyholders and creditors? Such a procedure would manifestly work an injustice upon and injury to Indiana policyholders and creditors.

The Missouri statute contemplates that, in case of insolvency, the risks of policyholders may be reinsured. This procedure must contemplate that the assets of the company be pledged to the reinsurer to pay the accrued

liability on the company's policies. We learn from pleadings filed in this court that the commissioner of insurance has made a contract reinsuring the company's policyholders. It is inconceivable that courts of equity in twenty foreign states could make separate reinsurance contracts protecting the policyholders of the company without having access to the principal assets of the company which are in the hands of the insurance department of the state of Missouri.

The difficulties and disadvantages incident to the insistence of courts upon appointing receivers for assets within their jurisdiction in case of the insolvency of a foreign corporation, is illustrated by the situation presented to this court in the case of *Cowen* v. *Failey* (1898), 149 Ind. 382, 49 N. E. 270. An insurance association domiciled in this state had certificate holders in many foreign jurisdictions. By the rules of the association, 20 per cent. of its premiums were retained in the state where they were received, and 80 per cent. forwarded to the principal office in Indianapolis. The Indiana receiver had possession of 80 per cent. of the assets, while 20 per cent. was scattered through a number of foreign jurisdictions. Receivers were appointed in many states. On request of the Indiana court most of these receivers accounted to the Indiana receiver for the assets which came into their hands, and the Indiana court allowed claims of certificate holders without regard to their residence or domicile, treating domestic and foreign creditors on the same basis. An Ohio court refused to account to the Indiana receiver, and paid directly to Ohio creditors what amounted to possibly 20 per cent. of what they would have been allowed had the assets come to Indiana and their claims been filed in the Indiana receivership. The Ohio creditors, who, of course, could not control the action of the Ohio court, filed claims with the Indiana court asking that

they be charged with the amount distributed to them by the Ohio court, and that their claims be allowed on the same basis as other creditors. The trial court refused to allow their claims, taking the position that the Ohio court had refused to cooperate, and treated the Ohio assets as liable solely for the payment of claims of residents of Ohio, and that for that reason Ohio creditors were entitled to no consideration in this jurisdiction. This court reversed the action of the trial court and held that, notwithstanding the Ohio court had refused, in the spirit of comity, to turn over its funds to the Indiana receiver for distribution, equity required that the Ohio creditors have their claims allowed, after charging them with such funds as they received from the Ohio receivership, together with any unnecessary expense incurred in the Ohio receivership. It is true that the courts of this state will appoint receivers for the property of insolvent corporations which is within this state, for the purpose of protecting liens and preferential rights of creditors within this state, but it is not, and has not been, the policy of this state to seize the property of insolvent foreign corporations and allocate it to the payment of the claims of citizens of this state in preference to other creditors. As seen in *Cowen* v. *Failey, supra,* and in the facts in this case, such a policy cannot benefit domestic creditors, and may work a positive injury to them. When the principal receivership and the principal assets are within this state, equity requires, and the rule is, that all creditors in like circumstances, whether domestic or foreign, be treated alike.

"The power of the courts to appoint receivers is one of the highest and most unusual character vested in courts of chancery, and is never exercised in doubtful or evenly balanced cases; but is exercised only where justice would in all probability be defeated by withholding it." *Corbin* v. *Thompson* (1895), 141 Ind. 128, 129, 40 N. E. 533.

Here we are not confronted with a foreign receivership, with authority limited to the jurisdiction of the court appointing the receiver. Title to the property of the company has vested by operation of law in the department of insurance of the state of Missouri. The superintendent of insurance may act with respect to its property and contracts in the same manner that the company might have acted before. Those who contracted with the company must be considered as having understood that, in case of insolvency, its affairs would be liquidated, or its risks reinsured, by the superintendent of insurance of the state of Missouri. We must consider that had they not desired such a consummation they would have insured with some other company. Perhaps they believed that such an arrangement had the advantage of avoiding separate receiverships in twenty states. It is true that if the superintendent of insurance for the state of Missouri was not acting to conserve the property of the company within this state, or was permitting it to be wasted or lost, or that such property was being removed to the state of Missouri, and that under the laws of that state Indiana creditors would be discriminated against or treated inequitably, another question would arise. But no such facts are asserted here, nor was there any evidence of such a state of facts submitted to the court below. Should the Indiana assets be administered for the benefit of Indiana policyholders and creditors, and distributed to them, they would still be required to present their claims in Missouri in order to participate ratably in the principal assets of the company, with the possibility of being equitably charged with the expense of the Indiana receivership, and thus an injury, rather than a benefit, would result to domestic creditors and policyholders. There is no showing of injury to be prevented,

nor necessity for a receivership in the interest of creditors, policyholders, or stockholders.

Judgment reversed, with instructions to set aside the order appointing receivers, and for further proceedings not inconsistent with this opinion.