**Leffert HOLZ, Superintendent of Insurance of the State of New York as Liquidator of the Preferred Accident Insurance Company of New York**

v.

**H. C. BALDWIN AGENCY, Inc.**

**No. IP 55–C–361.**

United States District Court
S. D. Indiana, Indianapolis
Division.

May 7, 1956.

Locke, Reynolds, Boyd & Weisell, by Hugh E. Reynolds, Indianapolis, Ind., for plaintiff.

Rhoads, Linder & Peden, by Mark W. Rhoads, Indianapolis Ind., for defendant.

STECKLER, Chief Judge.

As appears from the pleadings and exhibits, the defendant H. C. Baldwin, Inc., and The Preferred Accident Insurance Company of New York on November 12, 1947, entered into an agency agreement which empowered the defendant to write insurance policies for the company. The company subsequently modified the original contract by written addenda, the first of which was dated January 1, 1948, and later by one called the "Contingent Agreement" dated November 12, 1948, and by another dated October 1, 1949. Finally the agency and the company entered into a new contract, dated March

5, 1951, which by its terms superseded all previous agreements.

By order of the Supreme Court of New York dated April 30, 1951, the company was dissolved, and title to its assets was vested in plaintiff's predecessor in office, the Superintendent of Insurance of the State of New York, as statutory liquidator. On December 15, 1955, the plaintiff filed in this court his complaint against the agency for an accounting of all money collected as premiums on Preferred Accident Insurance Company policies and for judgment against the defendant for the amount of these premiums, $18,194.-68, less an undetermined amount "to which the defendant is entitled as commissions."

The defendant answered, denying material allegations of the complaint and requesting an accounting as to the "Contingent Agreement" dated November 12, 1948. The defendant filed two counterclaims; by the first it seeks to offset its claim for $18,353.72 as commissions and "claims expense and other items chargeable against the plaintiff on account of the contractual relationship." In the second counterclaim the defendant asks for an accounting and judgment on a claim under the terms of the "Contingent Agreement" of November 12, 1948, the full amount of which is not ascertained, whereby the insurance company agreed to pay to the agency, upon certain conditions and pursuant to a prescribed formula, ten per cent of the net profits realized each year on the company's business in the defendant agency.

The question to be resolved is brought before the court on the plaintiff's motion to strike the counterclaims on the grounds that they do not state legal defenses and are immaterial to the plaintiff's claim "because such claims cannot properly be set off or counterclaimed against the cause of action alleged by

said complaint herein." The defendant has opposed the plaintiff's motion. Counsel appeared before the court and argued the question orally and have filed extensive briefs both before and after argument.

Before analyzing the issues presented by the plaintiff's motion, it is well to note that the challenged counterclaims contain three distinct items, (1) the agent's commissions on premiums collected, (2) the promised bonus of the "Contingent Agreement," and (3) "claims expense and other items chargeable against the plaintiff on account of the contractual relationship."[1]

The heart of the plaintiff's position, briefly summarized, is: (1) The defendant's claims cannot properly be set off against the plaintiff's because they are not mutual debts, i. e., they are not held between the parties in the same capacity or character. See Hammond Pure Ice & Coal Co. v. Heitman, 1943, 221 Ind. 352, 47 N.E.2d 309, 145 A.L.R. 997, for an examination and definition of the concept, "mutual debts," as it is used in the Indiana courts. In other words, the defendant received the collected premiums in the capacity of a trustee for the insurance company (to whose interest the plaintiff has succeeded), and therefore it is the property of the plaintiff, whereas the agency's interest is a mere private debt, a mere contractual claim against the beneficiary, the principal, the insurance company, which is independent of the trust corpus. (2) Indiana courts would not interfere with a liquidation proceeding in a foreign jurisdiction, lest a preference be effected, and, further, the claims are barred in that proceeding because proofs of claims were not filed within the time fixed by the New York court. And (3), the alleged fruits of the "Contingent Agreement" were not matured, fixed claims at

---

1. While language contained in the two principal contracts is at least evidence that the contracting parties did not intend that the company should be responsible for certain specified agency expenses, the court does not here pass upon the merits of the defendant's claim, but confines its attention to facts of pleading which are fully developed in the complaint, exhibits, answer and counterclaims.

the time the company was adjudicated insolvent.

On the other hand the defendant takes the position that: (1) Only so much as represents the net difference between the claims, after the offset, is held in trust. (2) The claims of an agent may be set off against his principal's claims when they arise out of the same transaction. (3) Local policy would protect the interest of local creditors in property within the state. (4) The defendant's claims under the "Contingent Agreement" as well as its expenses were determined as of the time the liquidator was appointed.

■ It is an established policy in Indiana that courts will not interfere with liquidation proceedings in progress in a domiciliary court. See the case of O'Malley v. Hankins, 1935, 207 Ind. 589, 194 N.E. 168, wherein the reasoning behind the rule is developed at some length. Nor will the general rule yield in the special case, an example of which may be found in Clark v. Williard, 1935, 294 U.S. 211, 55 S.Ct. 356, 79 L.Ed. 865, when assets are found within Indiana.[2]

■ Finding that the policy of Indiana is to avoid interfering with a foreign liquidation proceeding does not, however, compel the conclusion that the counterclaims must be stricken, as the plaintiff suggests. Indeed the holding manifested in Robertson v. Malone, 5 Cir., 1951, 190 F.2d 756, a case quite similar to this one, would seem to require this court to liquidate defendant's claims.[3] That court, in relation to the claims which were unrelated to the transaction out of which the plaintiff's claim arose, said at page 759:

"On the other hand, even though the defendant was not entitled to merge by set-off his obligation to the statutory liquidator with his individual claim against such plaintiff, it did not follow that he was not entitled to have the merits of his counterclaim adjudicated. The statutory liquidator, representing the estate against which the defendant must assert his claim, was before the Court. Jurisdiction was present both as to citizenship and the amount in controversy and the defendant was entitled to maintain his counter-claim, at least in the absence of a showing of any proceeding or order staying the assertion of claims against the liquidator except in the liquidation proceedings. This might constitute a bar. Any judgment in favor of defendant upon his counterclaim would not necessarily determine that he was entitled to any more than a payment prorata with other creditors but it would liquidate his claim. In the present state of the pleadings and proof he was entitled to the judgment of the Court upon the merits in order to so liquidate his claim. The Court could have made clear that the rank and lien of any amount as thus liquidated would be left for determination in the liquidating proceedings in Pennsylvania.

2. The Indiana Supreme Court observed in O'Malley v. Hankins, 1935, 207 Ind. 589, 609, 194 N.E. 168, 176: "It is contended, however, that this state has adopted a policy of appointing a receiver to control the property of insolvent foreign corporations within this state until all domestic claims have been satisfied. But we find no evidence of such a policy." And again, Id. 207 Ind. at page 613, 194 N.E. at page 178, that: "It is true that the courts of this state will appoint receivers for the property of insolvent corporations which is within this state, for the purpose of protecting liens and preferential rights of creditors within this state, but it is not, and has not been, the policy of this state to seize the property of insolvent foreign corporations and allocate it to the payment of the claims of the citizens of this state in preference to other creditors."

3. For a report of the trial proceedings as to which the trial court was reversed in part see Malone v. Robertson, D.C.1950, 88 F.Supp. 749. Also see Malone v. Robertson, D.C.1953, 110 F.Supp. 927, for an opinion of the trial court following the second trial.

"The ruling of the Court that the claim of the plaintiff statutory liquidator was not subject to set-off against the defendant's claim as creditor in an individual capacity was correct, but the additional ruling that the Court would not adjudge the merits of the counterclaim, but would dismiss it without prejudice, was error."

■ This holding, it may be observed, does not leave the matter as one of choice within the trial court's discretion. Nor does the inconclusive reference to a staying order much affect the question here, for, though plaintiff has shown that there was an order requiring that proofs of claims be filed within a certain period which elapsed long prior to the institution of this suit, it nonetheless appears that the New York Insurance Law, McK. Consol.Laws, c. 28, will permit the defendant to file his claims in the liquidation proceedings.[4]

This right afforded the defendant by New York law, coupled with the facts that the liquidator has submitted himself to the jurisdiction of this court and that rule 13(b) of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A., permits the defendant to invoke the court's power to adjudicate his claims against the plaintiff, leads to the conclusion that this court is compelled to liquidate the defendant's claims.

It is recognized by the court that a general rule prevails to the effect that premiums on insurance policies collected by an agent for the insurer are held by the agent in trust for his principal. The court, however, in this case does not now decide the merits and could not, before the facts are fully developed, and remain on sound judicial ground. Also in this regard, since plaintiff poses the proposition that the defendant's claims under the "Contingent Agreement" were not matured, fixed claims at the time of the company's adjudicated insolvency, the court cannot make a determination of such issue until after the evidence is heard.

In view of the tenor of the complaint, the matter of the deduction of the commissions due the defendant from the collected premiums may not be a problem at the trial, though the parties in their briefs, have indicated otherwise.

In accordance with what has been said herein, the plaintiff's motion to strike defenses should be, and the same is hereby Overruled.

---

4. Plaintiff has quoted Section 543 of the New York Insurance Law, the second paragraph of which provides:
"2. Proofs of claim may be filed subsequent to the date specified [in the notice to creditors], but, no such claim shall share in the distribution of the assets until all allowed claims, proofs of which have been filed before said date, have been paid in full with interest."